**Z. A. ADAMS and Jean Adams,**
Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 18153.

United States Court of Appeals
Fifth Circuit.

March 7, 1961.

Joe J. Harrell and Jones & Harrell, Pensacola, Fla., for appellants.

Wilfred C. Varn, U. S. Atty., Tallahassee, Fla., for appellee.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal raises the question whether a prior acquittal of a substantive

charge insulates the defendant against a conviction for perjury committed on that trial.

Appellants, Z. A. and Jean Adams, husband and wife, were convicted of giving perjured testimony and suborning the perjury of others during an April 1958 trial of Z. A. on the charge of transporting and possessing moonshine whiskey. 26 U.S.C.A. §§ 5008(b) (1), 5642. The 1958 prosecution resulted in a mistrial from a hung jury. Shortly thereafter this perjury indictment was returned charging each with two counts of perjury, and together with two counts of suborning perjury. In January 1959 Z. A. was again tried on the moonshine charge. This time he was acquitted. The following December the trial of both Z. A. and Jean was held on the perjury indictment resulting in their conviction on all counts. It is this conviction which is here under consideration.[1]

The perjury charges center around an alibi offered by Z. A. Adams in the first moonshine trial. He testified, as did his wife, and several other witnesses, that he was at a birthday party in Georgia on the night the offense occurred.[2] If true, he could not have been in a car which was stopped on the same night by police officers at a far distant place in Florida. To substantiate this alibi both Z. A. and Jean testified that on their way home from the party they picked up George Adams (no kin) leaving a nearby night school and gave him a ride to his home.[3] As stated this prosecution resulted in a mistrial.

The January 1959 moonshine trial followed. Again the alibi issue was raised and substantially the same evidence was presented to establish it, with one major exception. Mr. and Mrs. Ezell—the party givers—the two main supporting witnesses for the alibi during the first trial, see note 2, supra, reversed their testimony by denying the presence of either of the Appellants at their party. Called as witnesses by the Government they testified that their testimony on the first moonshine trial, now acknowledged to have been false, had been solicited by Z. A. and Jean. There was repeated, however, testimony of other eye witnesses to support the party alibi. There was also a slight variance as to George Adams. Z. A. and Jean testified, as in the prior proceedings, that George Adams had been given a ride home on the night in question. George, however, did not testify at all. At the conclusion of all the evidence the jury returned a verdict of not guilty.[4]

Appellants' claim here is that the verdict in the moonshine case was an adjudication in their favor on the alibi issue. Stated another way, the jury has upheld their testimony as true. Therefore, it is argued, under the familiar principles of res judicata or collateral estoppel the Government is precluded from relitigating this issue of whether Z. A. was at the Georgia Party.

Since confusion in analysis otherwise so readily results, it bears emphasis that this problem is distinct from that of constitutional double jeopardy. That relates to a second trial of the same offense. All acknowledge that liquor violation and perjury are distinctly separate crimes.

■ The doctrine of res judicata does apply to prevent relitigation of an issue in a criminal as well as a civil case. Unit-

1. Jean, the wife, asserts no ground of error other than her husband's plea of res judicata.

2. The testimony of the Adamses on this point is the basis of counts one and three in the perjury indictment. In counts five and six they are charged together with suborning the perjured testimony of Mr. and Mrs. Ezell, the party givers, as to these facts.

3. This testimony is the basis for counts two and four in the perjury indictment.

4. As the acquittal came in the second, not first, moonshine trial, the defense theory is that since the testimony of Z. A. and Jean was the same on both, the acquittal in the second was likewise a jury determination of the first.

ed States v. Oppenheimer, 1916, 242 U.S. 85, 87, 37 S.Ct. 68, 61 L.Ed. 161, 3 A.L.R. 516; United States v. De Angelo, 3 Cir., 1943, 138 F.2d 466, 468. And it cannot be questioned that the doctrine will, in a proper case, act to preclude a second prosecution based on facts which have been found favorable to a defendant in a previous trial. United States v. Adams, 1930, 281 U.S. 202, 50 S.Ct. 269, 74 L.Ed. 807. Its applicability is not affected by the existence of two separate and distinct crimes, although this does render the double jeopardy plea in bar, often raised in these cases, without merit. The question is not whether the defendant has been found innocent of the crime of which he is presently charged—perjury— for he clearly was not. Rather it is whether prosecution for this crime of perjury would require relitigation of specific fact issues which have already been judicially determined.

The precise problem, therefore, is to decipher exactly what facts have been, or should be deemed to have been, determined by the jury which acquitted Adams of the moonshine charge. This is, of course, made difficult by the traditional general charge to the jury and the general verdict which they render under it in a criminal case.

Two opposing policy considerations have weighed heavily in prior determinations of this problem. On the one hand the concern exists that allowing an acquittal to afford any sort of insulation for perjury will be giving defendants an uncontrollable license to testify falsely. The resulting detriment to the reliability of evidence and more so, to the stability of the judicial process, would only be enhanced by the obvious fact that the more persuasively flagrant the defendant's fabrication, the greater his chances of

total exoneration. This completes a vicious circle since the successful acquittal on the substantive offense would immunize him as to the very falsehoods which brought it about. On the other hand some apprehension exists that allowing prosecution for perjury will actually give the state a second shot at the defendant for the same wrong. The mere fact, this argument continues, that one charge relates to the doing of an act and the other to a denial of having done it, or to affirmative proof that it was not so done, is not sufficient basis on which to make a distinction. This is particularly true where the same or substantially the same evidence is presented in both cases. Res Judicata in Successive Criminal Prosecutions, 24 Brooklyn L.Rev. 12 (1957). This, we see, approaches closely, whether acknowledged or not, an intuitive feeling akin to double jeopardy despite the fact that the two are distinct.

Before discussing the precedents, it is helpful to point out just what was involved in the moonshine trial. True, the prosecution had to prove that Z. A. was, or just recently had been, in the car. But to establish that it did not have to prove that he was not at the party. It was in no sense an element of the Government's case. It was, or might be, a persuasive evidentiary circumstance helpful to the defendant by affording him a specific means of disproving presence at the car by affirmatively proving presence elsewhere. On the other hand, the defendant's successful defense did not necessarily turn on his establishing his presence at the party. Under the Court's charge [5] the jury, at most, merely found that Z. A. was not in the car. But that was not a finding that he was at the party. He may have been just a mile

5. From the second moonshine trial: "The facts in the case are simple. The fact that this was moonshine whiskey that was in the car that was stopped by the highway partolman is not in dispute. The fact that it was moonshine whiskey was not in dispute. The only question that you have in this case so far as you are concerned is the question as to whether or not this defendant was in that automobile at the time that the highway patrolman stopped it. If he was, he is guilty. If he was not, of course, he is not guilty."

from the scene on the Florida highway, one hundred miles away, or safely home in bed. This, as we shall see, leads courts to consider as a "collateral issue" any fact which, if established on the perjury trial to have been false, is not inconsistent with the prior determination of innocence.

The Supreme Court has dealt with this problem in several cases, a leading one of which is Sealfon v. United States, 1948, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180. It involved several defendants who had been acquitted of the charge of conspiring to defraud the United States Government. Sealfon's connection with the conspiracy depended on a specific letter admittedly sent by him. Thereafter he and another of the former defendants were prosecuted and convicted for the substantive offense of publishing the false invoices which had been the basis of the alleged conspiracy. As Sealfon was an aider and abettor, his connection with the substantive offense again turned on whether this letter was sent pursuant to an agreement with the other defendant. To determine whether the questions of publishing the false invoices had been found in the defendants' favor the Court said it must look to "the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial." On setting the instructions and all the circumstances in a "practical frame," the Court found that the facts which were crucial to the prosecution's case in the second trial were "necessarily adjudicated" in the first "to be non-existent." A second attempt to "prove the agreement which at each trial was crucial to the prosecution's case" is a thing, the Court holds, which "the prosecution may not do." 332 U.S. at page 580, 68 S.Ct. at page 240.

Following Sealfon this Court in Yawn v. United States, 5 Cir., 1957, 244 F.2d 235, was presented with a similar set of circumstances. The defendant was first acquitted of a substantive offense, possession of a still. An indictment was brought one week later in which possession of the very same still at the very same time was alleged as one of the specific overt acts of a conspiracy to violate the federal liquor laws. We held the question of possession of the identical still to have been conclusively decided in the first trial and therefore the defendant's commission of this act could not properly be used as an overt "act to effect the object of the conspiracy." 18 U.S.C.A. § 371. The case was remanded for retrial on the conspiracy charge without the use of the evidence on possession of the still.

Both of these cases deal with circumstances in which it was possible for a court to ascertain that the fact issue crucial to the second prosecution was "necessarily determined" in the earlier trial. It was "necessarily determined" on the first trial because it was there likewise crucial to the Government's case. When this is the situation it is clear that the fact issue may not be relitigated. However, in the present case a review, as directed by Sealfon, of the evidence presented at both trials and the charge under which the jury rendered the acquittal in the first allows of no such certainty. On the contrary, it is clear here that the facts now in controversy were not necessarily determined in the moonshine trial. They were not necessarily determined because they were not essential to the prosecution's case. More than that, a verdict of not guilty may have come from many other considerations. The jury might have found that the Adamses were not at the party and yet might have still reached the conclusion that the Government failed to prove beyond a reasonable doubt Z. A.'s guilt of possession and transportation of moonshine—a Scotch verdict of "not proven." In this particular record encompassing the two moonshine trials and the perjury trial, several factors bore on this. There was first the serious question of identification of Z. A. in the moonshine automobile. The highway patrolman could "not be positive."

It was dark. The officer got only two glimpses of the man, once just as he started to run away. Next there was the question of *who* was doing the transporting and *who* had the possession. Cf. Barfield v. United States, 5 Cir., 1956, 229 F.2d 936, 941–944. Admittedly the car did not belong to Z. A. Nor was he driving it. He was ostensibly a passenger. Of course the other two in the car implicated Z. A., but their credibility was under substantial attack—one as a confessed (and now convicted) liquor violator, the other whose story had many curious facets.

In other words, there is no necessary inconsistency between Adam's innocence of the moonshine charge and the couple's absence from the party. The latter did not destroy the former. The jury conceivably could have discredited entirely the "party story" and still have returned a verdict of not guilty. In this situation the authorities dealing directly with perjury prosecutions clearly hold that when the fact is not *necessarily* determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue.

United States v. Williams, 1951, 341 U.S. 58, 71 S.Ct. 595, 599, 95 L.Ed. 747,[6] involved an indictment for perjury allegedly committed on the trial of the defendants, state police officers, for aiding and abetting the use of third degree methods to force prisoner confessions in violation of the Civil Rights Acts. They were acquitted on the aiding and abetting charge. The basis of the perjury charge was testimony given by the defendants during the original trial to the effect that they had not seen their co-defendant abuse the prisoners. They were found guilty under the perjury indictment. The Supreme Court affirmed the conviction saying that an acquittal of the crime of aiding and abetting "was certainly not a determination that [the defendants] did not see [their co-defendant] assaulting the prisoners."

At least two cases in this area have dealt with fact situations very nearly identical to the one now before us. Kuskulis v. United States, 10 Cir., 1929, 37 F.2d 241; Lipscomb v. United States, 8 Cir., 1929, 33 F.2d 33. In Lipscomb an alibi was the basis of perjury charges while in Kuskulis the charges related to testimony given by the defendant that he had not been present at the time and place the offense with which he was charged had occurred. The original prosecution in both cases resulted in acquittals of the substantive offenses followed promptly by indictment and conviction for perjury. In each the appellate court held that res judicata was no bar. They reasoned that the veracity of the testimony in regard to where the defendant was at the time of the crime was not necessarily and directly determined by an acquittal of the substantive charge. The fact was not directly in issue but represented what these courts described as a purely collateral matter.

Appellants cite several cases which they assert compel reversal of their convictions. Ehrlich v. United States, 5 Cir., 1944, 145 F.2d 693; Allen v. United States, 4 Cir., 1912, 194 F. 664, 39 L.R.A., N.S., 385; Chitwood v. United States, 8 Cir., 1910, 178 F. 442; United States v. Butler, D.C.E.D.Mich.1889, 38 F. 498, 499. On analysis, however, reliance on these cases proves to be misplaced. Chitwood v. United States, supra, involves a charge of theft from a post office by an employee who at his trial denied that he read or knew the contents of a confession he had signed. After acquittal he was indicted for perjury based on this testimony. The Court of Appeals reversed the conviction because of admission of evidence on commission of the original crime which it felt had no relation to defendant's knowledge of the contents of the confession. The court stated, however, that the perjury indictment was valid and the res judicata objection without merit because the prior acquit-

---

6. See annotation 95 L.Ed. 755.

tal was not necessarily inconsistent with the testimony being false.

In United States v. Butler, supra, the defendant was acquitted on a charge of illegally selling liquor. A perjury indictment followed on the grounds that he falsely testified that he had not sold the liquor. The court, after holding the first acquittal to be res judicata on this issue, went on to say, "had he sworn * * * that he had paid his tax [on the liquor] and had been acquitted by the jury upon the ground that he did not sell liquor, the issue would have been different * * *."

The other cases on which Appellants rely likewise offer little support for their position. True reversal is decreed in each on grounds akin to res judicata. But they involve situations in which the testimony alleged to have been false is on facts which were the very basis of a prior acquittal. Such being the case, the defendants' innocence of the substantive crime could not be reconciled with a subsequent finding of falsity. The holdings are, therefore, completely consistent with the principles we have discussed.

The jury below had before it fact questions which Appellants have not shown, as of course they could not, to have been necessarily determined by the jury in the prior prosecution. Quite properly, the charge to the jury in the moonshine case did not require that the jury find the alibi to be true in order to acquit Z. A. It merely specified that should they believe the alibi they must acquit him. But it also gave the usual directions to acquit unless they believed the Government had proved the other elements of its case beyond a reasonable doubt.

Principles of res judicata and collateral estoppel respond to the demands of the effective administration of justice. They do not prevent prosecution for perjury in situations such as this.

Affirmed.