Thomas E. LADNER, Appellant,

v.

The STATE of Texas, Appellee.

Billy Ray HORTON, Appellant,

v.

The STATE of Texas, Appellee.

James M. HYDEN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 1004–88 to 1006–88.

Court of Criminal Appeals of Texas, En Banc.

Oct. 25, 1989.

---

John Seale, Jasper, for Ladner.

Paul N. Buchanan, Beaumont, Jeff L. Haas, Tyler, for Horton and Hyden.

Jack Skeen, Jr., Dist. Atty., and Christian E. Bryan, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

On January 5, 1988, in Cause Nos. 5043, 5044 and 5045 in Sabine County, Texas, Thomas E. Ladner, Billy Ray Horton, and James M. Hyden (hereinafter referred to as appellants), were separately indicted for the offense of Violating the Civil Rights of a Prisoner, charged pursuant to V.T.C.A. Penal Code, § 39.021.[1] On July 15, 1988, a jury in Sabine County found the appellants "not guilty." While these indictments were pending, on March 3, 1988, in Smith County, Texas, the appellants were separately indicted for the offense of murder in Cause Nos. 12–88–00193–CR, 12–88–00194–CR and 12–88–00195–CR presently pending in the 241st Judicial District Court. The Smith County and Sabine County indictments arose from an incident involving the death of Loyal Garner, Jr., which occurred on December 25, 1987.

Following their acquittal in Sabine County, the appellants filed a pretrial writ of habeas corpus in the 241st Judicial District Court of Smith County, Texas, claiming *inter alia*, that the State was foreclosed from pursuing the murder prosecution due to the doctrine of collateral estoppel, which is embodied within the double jeopardy guarantee of the Fifth Amendment to the United States Constitution and "... bars relitigation between the same parties of the issues actually determined at a previous trial." *Ashe v. Swenson*, 397 U.S. 436, 442, 90 S.Ct. 1189, 1193, 25 L.Ed.2d 469 (1970). The trial court denied relief. However, on appeal to the Twelfth Court of Appeals the requested relief was granted. See *Ladner, et al. v. State* (Ct.App.—Tyler, No. 12–88–00193–CR, delivered August 31, 1988). We granted the State's petition for discretionary review to examine the correctness of the court of appeals' application of the collateral estoppel doctrine.

■ Dispensing with a preliminary claim, the court of appeals, after applying the appropriate legal standard as required by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), correctly concluded that the murder offense, as alleged in the Smith County indictments, was not "the same offense" as the civil rights offense, as alleged in the first count of the Sabine County indictments. Therefore, the murder prosecution was not barred by the "same offense" theorem implicit in the Double Jeopardy Clause of the Fifth Amendment to the United States Constitu-

---

1. V.T.C.A. Penal Code, § 39.021, in pertinent part states:

   (a) A jailer or guard employed at a municipal or county jail, by the Texas Department of Corrections, or by a correctional facility authorized by Article 5115d, *Revised Statutes*, or Article 6166g–2, Revised Statutes, or a peace officer commits an offense if he:

   (1) intentionally subjects a person in custody to bodily injury knowing his conduct is unlawful.

   In addition the relevant count to the Sabine County indictment reads:

   [T]hat [named appellant], on or about the 25th day of December, A.D. 1987, and before the presentment of this indictment, in said County and State, did then and there as a peace officer, to-wit: [Deputy Sheriff of Sabine County, Texas], intentionally subject Loyal Garner, Jr., a person in custody, to bodily injury, to-wit: by hitting Loyal Garner, Jr., on his head and body with a slapstick and fists and causing Loyal Garner, Jr. to fall and strike his head against a wall and door; knowing his conduct was unlawful, and the death of Loyal Garner, Jr. occurred therefrom; ....

   As observed by the court of appeals in fn. 1 of their opinion, both Horton and Hyden were alleged to be Deputy Sheriffs of Sabine County, Texas, while Ladner was alleged to be the Chief of Police of the City of Hemphill, Texas.

tion.[2]

█ The more troublesome issue confronting the court of appeals, and the issue we granted review to consider, is the applicability of the collateral estoppel doctrine. Embodied within the constitutional protection that a criminal defendant cannot be twice placed in jeopardy for the same crime is the doctrine of collateral estoppel, which the Supreme Court in *Ashe v. Swenson,* supra, defined as follows:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Id.,* 397 U.S. at 443, 90 S.Ct. at 1194.

Quoting *Ashe v. Swenson,* supra, the court of appeals stated that in order to make this determination the following approach is necessary:

> 'Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 U.S. 575, 579 [68 S.Ct. 237, 239, 92 L.Ed. 180 (1948)].... Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where

the first judgment was based upon a general verdict of acquittal.'

*Id.* at Slip op., pp. 7–8.

In applying the elusive standard enunciated by the Supreme Court, the court of appeals observed that the transcripts of each appellant contained *inter alia,* the respective applications for the writ, copies of the Sabine and Smith Counties indictments, the trial court's charge, the jury verdict, and a transcription of the statement of facts taken at the habeas corpus hearing held in Smith County on July 16, 1988. Conspicuously, but understandably[3] lacking from the record on appeal was the statement of facts concerning the trial on the merits of the violation of the civil rights of a prisoner tried in Sabine County. From this record, however, the court of appeals stated it was able to ascertain:

> The record reveals that the alleged beating of Garner in the Sabine County Jail constitutes the basis for the murder prosecutions. The State concedes that a "majority" of the witnesses who testified in the Sabine County cases will be called by the State to give testimony concerning "the same events, occurrences, circumstances" that such witnesses testified to in the Sabine County prosecutions. It is also undisputed that the court signed judgments of acquittal in the Sabine County cases.

> Paul Buchanan, counsel for appellant Hyden, testified there was no dispute at the trial of the Sabine County cases that each appellant was a peace officer and Garner a person in custody at the time of the alleged commission of the civil rights offense, stating "[t]he primary issue being the hitting of [Garner] with a slapstick and especially the fact that his death was caused therefrom." Buchanan also testified that there was "no issue as to the fact that [Garner] had died but

---

**2.** The "same offense" rationale of double jeopardy may be stated as follows:

> [T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provi-

sion [statute] requires proof of a fact which the other does not.

*Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

**3.** The hearing on the appellants' application for writ of habeas corpus was held one day after their acquittal in Sabine County.

there was a significant issue as to the cause of death." On cross-examination Buchanan candidly admitted he could not testify as to "what the basis of the jury's verdict [was]." He further testified that the allegations that Ladner struck the blows "knowing his conduct was unlawful" was disputed. Buchanan also testified without dispute that each appellant testified in his own behalf in the Sabine County prosecutions, and that each admitted that he was a peace officer on the date of the alleged offense.

John Hannah, who acted as special prosecutor of Sabine County indictments, testified at the habeas corpus hearing. Hannah stated that no "serious issue" was presented to the Sabine County jury as whether appellants were "peace officers." Hannah, when asked whether he and defense counsel "agreed [that Garner] ... was in fact a prisoner," stated that although that issue was submitted to the jury, "I don't think that the defense attempted to make that an issue."

*Id.* at Slip op., p. 7–8.

The court of appeals, after considering the evidence from the writ hearing, the charge submitted to the jury in the Sabine County trial, and the respective indictments, formulated the following conclusions:

(1) At the trial of the civil rights violation it was undisputed that appellants were peace officers and that the deceased was a prisoner at the time of the alleged attack on him;

(2) The jury's acquittal must have been grounded on one or more of the following disputed fact issues: whether (a) Ladner intentionally struck Garner, (2) knowing his conduct was unlawful, (3) Garner died as a result of the injuries, and (4) whether Ladner's conduct was justified under V.T.C.A. Penal Code, § 9.53 (Maintaining Security in Penal Institutions).

(3) Each of the aforementioned issues, with the exception that Ladner [as well as the other appellants] knew his conduct was unlawful, had to be established or disproved by the State beyond a reasonable doubt in the Smith County prosecution.

(4) The question of whether Ladner acted "knowing his conduct was unlawful" was submitted to the Sabine County jury as an essential element of the civil rights offense. And, according to the court of appeals, was the only fact issue submitted in those cases that is not an essential element of the murder prosecution pending in Smith County.

(5) Reasonable lay jurors could not have predicated their acquittal in the civil rights prosecution solely on the disputed factual issue of whether Ladner struck the blows against Garner "knowing his conduct was unlawful," given the profusion of instructions set forth in the charge respecting the justification defense.[4]

Consequently, in light of those observations the court of appeals, in holding that collateral estoppel barred the murder prosecution, opined:

With that analysis, three disputed issues remain for consideration. They are: (1) Did Ladner intentionally strike the alleged blows against Garner; (2) Did those blows result in the death of Garner; and if so, (3) Was Ladner's conduct justified under section 9.53. It is obvious that the State must necessarily relitigate all of these issues in order to convict appellants of murder under either paragraph set forth in the Smith County indictments. The doctrine of collateral estoppel prohibits the State from so doing, and that ingredient of double jeopardy prohibits prosecution of the Smith County indictments against the appellants.

---

4. V.T.C.A. Penal Code, § 9.53, states as follows:

A peace officer, jailer, or guard employed at a municipal or county jail, or a guard or correctional officer employed by the Texas Department of Corrections is justified in using force against a person in custody when and to the degree the peace officer, jailer, guard or correctional officer reasonably believes the force is necessary to maintain the security of the penal institution, the safety or security of other persons in custody or employed by the penal institutions, or his own safety.

*Ashe v. Swenson,* 397 U.S. at 443–446 [90 S.Ct. at 1194–1196]. [Footnotes omitted]

Our opinion sufficiently answers the State's arguments in this case other than its arguments that (1) the legislature has authority, and is not precluded by the Fifth and Fourteenth Amendments from "[splitting] a single transaction into separate crimes ... [and providing] multiple punishments;" (2) section 39.21(c) authorizes dual prosecutions for the same conduct, and that jeopardy's protection under the Fifth and Fourteenth Amendments does not affect such legislative authority; and (3) appellants are estopped to claim jeopardy's protection because the "instigated or procured the first proceeding with the intent to preclude the full consequences of [their] criminal conduct."

We reject the State's argument one and two because it is clear that while the legislature may be free to create and define offenses as it chooses, the prosecutors and the courts are not free to prosecute and convict an accused contrary to jeopardy's first guarantee. *Brown v. Ohio,* 432 U.S. at 165 [97 S.Ct. at 2225]; *Ashe v. Swenson* 397 U.S. at 445–446 [90 S.Ct. at 1195–1196]. It must be understood that this case is not one "[w]here consecutive sentences are imposed *at a single criminal trial* [and in which] the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." (Citations omitted) *Brown v. Ohio,* 432 U.S. at 165 [97 S.Ct. at 2225]. (Emphasis ours) [footnotes omitted]

*Id.* at Slip op., p. 12–13.

In essence, the court of appeals in concluding that the doctrine of collateral estoppel barred the Smith County murder prosecutions, found that three elements were essential to the violation of a prisoner's civil rights offense which are not required in a prosecution for murder to-wit: (1) that at the time of the offense the defendant was a peace officer; (2) the victim was in the defendant's custody at the time of the criminal violation; and (3) knew that their conduct was unlawful. In rejecting the notion that the Sabine County jury acquitted the appellants on any one of the above issues the court of appeals resolved that the jury could not have grounded its acquittal on the issues of whether the appellants were peace officers or whether the victim was in custody of the appellants at the time of the Sabine County offense because the testimony adduced at the hearing on the writ of habeas corpus indicated to the contrary. Specifically, because Paul Buchanan, counsel for appellant Hyden testified that there was no dispute as to whether each appellant was a peace officer or that victim Garner was in the custody of the appellants at the time of the alleged commission of the civil rights offense. In addition, according to the court of appeals, this testimony was buttressed by that of special prosecutor John Hanna.

As to the element that each appellant "knew that his conduct was unlawful" at the time of the commission of the civil rights violation, the court of appeals concluded that the Sabine County jury could not have grounded its acquittal on that disputed issue on what we consider a wholly novel theory:

The jury was not given the statutory definition [footnote omitted] of 'unlawful,' so we must assume that the jury in its deliberations utilized the meaning commonly ascribed to the word, viz., 'not lawful: contrary to or prohibited by law: not authorized or justified by law: ... disobeying or disregarding the law....' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2502 (1976). The definition of the word is essentially the same in BLACK'S LAW DICTIONARY 1377 (5th ed.1979); however, BLACK adds that the word unlawful, [w]hile necessarily not implying the element of *criminality,* ... is broad enough to include it." (Emphasis ours.) Consequently, a realistic examination of the record, however meager and incomplete, employing as we must, reason and common sense, persuades us that reasonable lay jurors could not have predicated their acquittal in the civil rights prosecu-

tions solely on the disputed factual issue of whether Ladner struck the blows against Garner 'knowing his conduct was unlawful,' given the profusion of the instructions set forth in the charge respecting the justification defense.

*Id.* at Slip op., p. 10–11.

The court of appeals then explained in fn. 8 that in respect to § 39.021 of the penal code that:

It is noteworthy that section 39.021 was first enacted by the 66th Legislature in 1979. (Act of June 13, 1979, ch. 618, § 1, 1979 Tex.Gen.Laws 1383). Subsection (a)(1) then read in part:

A peace officer ... commits an offense if he: intentionally subjects a person in his custody to bodily injury *knowing his conduct is unlawful.* (emphasis ours.)

Although the section was later amended twice, in 1983, and again in 1987, no substantial change was made to the language under consideration. On the other hand, section 9.53 was *first* enacted in 1987. (Act of June 17, 1987, ch. 512, § 1, 1987 Tex.Gen.Laws 2124.) It appears that the legislature, in the absence of a justification defense specifically applicable to the conduct proscribed by the 1979 version of section 39.021(a)(1), intended to criminalize assaultive conduct of a peace officer, jailer or guard in penal institutions towards a prisoner only when the officer's conduct was not justified under the facts and circumstances surrounding the conduct. Thus the term "knowing his conduct is unlawful" was inserted in the definition of the offense in 1979 in order to provide a justification defense not then separately provided. The enactment of section 9.53 appears to render the term vestigial and unnecessary.

*Id.* at Slip op., p. 11–12.

By its interpretation we can only conclude that the court of appeals has held that the element of § 39.021, supra, requiring the peace officer actor know that his conduct was unlawful at the time he perpetrated the offense, was rendered superfluous by the legislative enactment of § 9.53, supra. For reasons to be stated later, we cannot agree with this conclusion nor with the ultimate result reached by the court of appeals.

In order to fully comprehend the evanescent doctrine of collateral estoppel, we look for guidance to the interpretations of *Ashe* in the Fifth Circuit. As in *Dedrick v. State,* 623 S.W.2d 332, 336 (Tex.Cr.App. 1981), we observe that a clear statement of the principles involved was made in *United States v. Mock,* 604 F.2d 341 (5th Cir.1979):

In principle, the law of collateral estoppel is clear; in application, it can be a slippery concept indeed. According to *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* [at] 443, 90 S.Ct. at 1194. Thus, *Ashe* mandates two inquiries: First, what facts were necessarily determined in the first law suit? See *United States v. Ballard,* 586 F.2d 1060 (5th Cir.1978); *Adams v. United States,* 287 F.2d 701 (5th Cir.1961). Second, has the government in a subsequent trial tried to relitigate facts necessarily established against it in the first trial? Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts. *Blackburn v. Cross,* 510 F.2d 1014 (5th Cir.1975); *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir.1972). Thus, while the parent doctrine of double jeopardy bars a subsequent prosecution based on a different section of the criminal code when "the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other," its progeny, collateral estoppel, bars only the reintroduction or relitigation of facts already established against the government. To state the distinction in more prosaic terms, the traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain

facts in order to establish the fact of the crime. See *United States v. Kramer*, 289 F.2d 909 (2d Cir.1961) (Friendly, J.). [Footnotes omitted]

*Id.* at 343.

▪ Most importantly, the concept of collateral estoppel has proven to be narrower in scope as might have originally been gleaned from the literal language of *Ashe*. In particular, the question is not whether there is a possibility that an ultimate fact was determined adverse to the government, but whether after examining the pleadings, evidence, jury charge and other relevant material in the record of the first trial a "rational jury" *necessarily* grounded its verdict upon an issue which the defendant seeks to foreclose from relitigation. Thus, as recognized in *United States v. Gonzales*, 548 F.2d 1185 (5th Cir. 1977):

> ... *Adams v. United States*, 287 F.2d 701 (5th Cir.1961), supra, restated the proposition to the effect that when a "fact is not *necessarily* determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue. [citations omitted]

*Id.* at 1191.

▪ Contrary to the court of appeals' conclusion, we are of the opinion that a fact issue not crucial to the Smith County murder prosecution may have been the foundation of the Sabine County jury's acquittal; thus, an ultimate fact essential to the murder trial was not "necessarily determined." As previously noted, the court of appeals determined that the three essential elements unique to the civil rights violation could not have been the basis of the Sabine County acquittal. Again, these three elements consist of: (1) that at the time of the incident the appellants were peace officers; (2) that the victim, Loyal Garner, Jr., was in the appellants' custody; and (3) the individual appellant knew his conduct was unlawful at the time of the commission of the offense. As to the first two elements, the court of appeals simply disposed of the issue by relying totally on the testimony presented by the defense at the hearing on the writ of habeas corpus that these ele-

ments were in fact uncontested by the defense in the Sabine County trial. While this method of resolving the issue is indeed simple, convenient, and seemingly persuasive, it is incorrect. Put simply, it ignores the dictates of *Ashe v. Swenson*, supra, and its progeny that where a general verdict acquitting a defendant was rendered by the jury it is essential that the appellate court "examine the record of the prior proceedings, taking into account the pleadings, evidence, charge, and other relevant matter ..." *id.*, to determine whether a rational jury necessarily grounded the acquittal in the former trial on ultimate fact issues identical to some or all of those in the subsequent proceeding. Paying mere lip service to this constitutional standard is insufficient. While indeed any argument that the jury in the Sabine County trial may have doubted that the appellants were peace officers or that Garner was in their custody may be implausible and in actuality without a factual foundation, relying on the writ testimony of the appellants' attorneys supplied an inadequate basis for the court of appeals' decision. Cf. *Johnson v. Estelle*, 506 F.2d 347 (5th Cir.1975), *cert. denied*, 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975). Courts should not decide the proper application of the doctrine of collateral estoppel solely on the basis of the self-serving declarations and opinions of counsel. Cf. *McCrory v. State*, 643 S.W.2d 725, 733 (Tex.Cr.App.1983).

Notwithstanding that the court of appeals failed to consider the criteria mandated by the Supreme Court, we need not decide whether the right result was reached on this basis alone. Rather, we find also that the court of appeals was incorrect in concluding that the jury in the first trial could not have grounded its acquittal on the element that appellants did or did not know their conduct was unlawful.

▪ As previously observed, the court of appeals concluded that § 9.53, supra, had rendered that element of § 39.021(a)(1), (2), which requires the prosecution to prove a defendant knew "his conduct to be unlawful" a nullity. That may or may not be

a valid conclusion; however, it is unnecessary for us to resolve that issue. Section 39.021(a)(1)(2), supra, specifically makes such knowledge an element of the offense. The jury charge in this case submitted it as an element; thus, it was necessary for the State to prove it beyond a reasonable doubt. *Benson v. State*, 661 S.W.2d 708 (Tex.Cr.App.1982 and 1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984); *Boozer v. State*, 717 S.W.2d 608 (Tex.Cr.App.1984). Thus, it is arguable that the jury could have found that Ladner struck the deceased and caused his death, but acquitted the appellants because the State failed to prove he did so "knowing his conduct to be unlawful." Section 39.-021(a)(1), (2), supra. Consequently, the jury's verdict could have been predicated upon the failure of proof of an element of the offense that is not necessary to proving the offense of murder. In other words, the jury's verdict in the civil rights prosecution could have been based on the resolution of an issue in the appellants' favor that will not be applicable to the succeeding prosecution. Very simply, whether a defendant knew his conduct was unlawful is statutorily irrelevant in a murder prosecution.

There are additional matters that render the court of appeals' decision incorrect. The two paragraph indictment alleged that appellant Ladner was the Chief of Police of Hemphill. The first paragraph claimed that as the Chief of Police he intentionally subjected the deceased to bodily injury by hitting him on his "head and body with a slapstick and fists ...," thereby causing the deceased to hit his head against a wall and door, resulting in the deceased's death. In addition, as noted previously, the indictment included the allegation that the appellant did these things "knowing his conduct was unlawful."

The second paragraph makes similar preliminary allegations. Thereafter, however, it alleges that appellant Ladner intentionally prevented the deceased from getting medical attention after the deceased was injured while in custody, resulting in the deceased's death. This paragraph also included the claim that the appellant did this knowing his conduct was unlawful.

The indictments against the other two appellants, Horton and Hyden, are identical except they are alleged to have been Sabine County Deputy Sheriffs.

■ The jury charge, on the other hand, is somewhat different than the indictments. The instructions are divided between Count One and Count Two (paragraphs 1 and 2 of the indictment). The jury charge initially states that a peace officer violates the civil rights of a prisoner if "he intentionally subjects a person in custody to bodily injury knowing his conduct was unlawful." It then defines "intentional," "custody," and "peace officer." Before it sets out the allegations of the indictment the charge submits the defensive instruction that a peace officer is justified in using force against a prisoner to the extent reasonably necessary to "maintain the security of the penal institution...." The charge to the jury includes this defensive submission:

Now, if you find from the evidence, or have a reasonable doubt thereof, that Thomas Ladner, as a peace officer or guard employed at a municipal or county jail, used such force against Loyal Garner, Jr. while he was in custody when and to the degree the peace officer, Thomas Ladner, reasonably believed that force was necessary to maintain the security of the penal institution, the safety or security of other persons in custody or employed by the penal institution, or his own safety or security, you will say not guilty by your verdict.

Thus, as to Count One the jury was authorized to find appellant Ladner not guilty without ever having to determine whether he struck the deceased or caused his death as alleged in the indictment. It is only after this instruction that the jury was asked to determine whether Ladner even struck the deceased as alleged in the indictment. Therefore, the jury could have reached its general verdict of not guilty without ever having to resolve the issue of whether Ladner struck the deceased with a slapstick or his fists. Consequently, it is impossible to conclude that this issue was resolved favorably to Ladner.

The charge, also as to Count One, authorized the jury to find appellants Horton and Hyden guilty only if they found Ladner guilty of striking the deceased as alleged in the indictment, and then only if the jury found they had a legal duty to prevent the offense and failed to do so. On the whole, the basis of the jury's general verdict of not guilty as to Horton and Hyden is equally indeterminable as the verdict in favor of Ladner because the jury could not find them guilty as a party unless it found Ladner guilty as the principal.

■ Count Two, in three separate paragraphs, presented to the jury the claim that the appellants willfully denied the deceased reasonable and necessary medical attention, knowing their conduct was unlawful, resulting in the death of the deceased. The parties' charge was not applicable to this portion of the charge.

As previously noted, the appellants are charged separately in Smith County with murder. The identical indictments in two paragraphs allege that they individually intentionally and knowingly caused the death of the deceased "by striking him about the head with a slapjack, and striking him about the head with a night stick, and by striking him about the head with an object to the Grand Jury unknown...." The second paragraph claims that the appellants individually "intending to cause serious bodily injury ... [to the deceased] intentionally and knowingly commit, an act clearly dangerous to human life, to-wit: by striking ... [the deceased] about the head with a slapjack, and by striking ... [the deceased] about the head with a nightstick, and by striking ... [the deceased] about the head with an object to the Grand Jury unknown, and thereby causing the death of ... [the deceased]."

Contrasting the allegations in the murder indictments with the indictments and jury charge in the civil rights prosecution it is apparent that the issues are far from identical. As noted, under the jury charge the jury could have acquitted Ladner without ever having to consider whether he struck the deceased with a slapstick. Under either paragraph of the murder indictment in order to obtain a conviction the State must properly prove Ladner struck the deceased as alleged with the intent to kill him. Relative to Hyden and Horton, their legal responsibility will be dependent upon the proof supporting the indictment's allegations and not necessarily what may or may not be proved against Ladner.

The allegations in the murder indictment have no relationship to the issues that comprise the second count of the civil rights violations indictment.

Whether an acquittal of a civil rights prosecution bars a prosecution for the substantive offense that produced the civil rights prosecution is a matter of first impression in Texas. In fact, there is very little case law on the subject at all. The federal courts, however, have examined the issue in a few cases. *United States v. Guillette*, 547 F.2d 743 (2nd Cir.1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977), is a factually complex and legally involved case that confronts the opposite of the present issue, but its reasoning is nonetheless persuasive. The defendants in *Guillette* (Guillette and Joost) were convicted of conspiracy to deprive a citizen of his civil rights in violation of 18 U.S.C § 241. Their prosecution arose out of an incident in which the government alleged they killed a prospective government witness who was going to testify against them in the burglary of a National Guard Armory. The defendants were originally indicted for conspiracy to deprive the deceased of his civil rights, obstruction of justice by force and violence, and the use of an explosive device in the commission of a felony. The deceased was killed when a bomb exploded as he opened the front door of his house.

The defendants were originally convicted on all charges; however, those convictions were reversed and remanded. At the second trial, Joost was acquitted on the charges of obstruction of justice by force and violence and the use of an explosive device. The jury could not reach a verdict on the conspiracy to violate the deceased's civil rights. Thus, a mistrial was declared on that charge.

In his third trial, Joost was convicted of the civil rights charge.

In his appeal, Joost claimed that collateral estoppel barred the government from trying him for conspiracy to violate the deceased's civil rights because the jury had acquitted him of the obstruction of justice and using a bomb to commit a felony charges. The court of appeals rejected Joost's contentions. The court stated:

Double jeopardy bars only relitigation of those issues of fact that were 'necessarily ... determined in favor of the defendant by a valid and final judgment in a prior proceeding.' [Citations omitted] Joost has failed to sustain his burden of showing that elements essential to his conviction of conspiracy with death resulting were foreclosed from jury consideration by his prior acquittal.

*Id.* at 755.

In the present case, the appellants have similarly failed to prove that the elements essential to their possible conviction for murder "were foreclosed from jury consideration by ... [their] prior acquittal[s]." *Id.*

In *United States v. Kalish*, 780 F.2d 506 (5th Cir.1986), *reh. denied*, 689 F.2d 190 (1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983), the court of appeals confronted the issue of collateral estoppel and emphasized that before the doctrine can be invoked the matters to be relitigated must have dictated the previous acquittal. Factually, in *Kalish* the defendant was first tried as a result of the seizure of a shrimp boat loaded with marijuana. The defendant was acquitted of conspiracy to import the drug and conspiracy to possess with the intent to deliver the drug.

About the same time the shrimp boat was seized, the authorities also seized another boat also loaded with marijuana—an oil platform supply boat. After the defendant was acquitted for the offenses arising from the seizure of the shrimp boat he was prosecuted for the same charges relative to the drugs discovered on the other boat. In addition, he was charged with the substantive offense of possession with the intent to deliver. He was found guilty this time of all charges.

On appeal, the court of appeals reversed his conviction on the conspiracy charges because of his acquittal in the charges arising from the seizure of the shrimp boat. His conviction for possession, however, was affirmed.

Sometime later, the defendant was charged with a number of offenses relative to a large smuggling operation in East Texas. As a part of the indictment the defendant was charged with possession with intent to distribute and with aiding and abetting such possession. In another count the defendant was charged with importation of marijuana and aiding and abetting such importation. He was convicted of these offenses.

In a post-conviction writ of habeas corpus the defendant claimed that his first conviction for the substantive offense of possession (arising from the seizure of the oil platform supply boat) was barred by collateral estoppel. Essentially, according to the court, the defendant claimed that in his first two prosecutions the government's principal witness was the same person. Therefore, according to the defendant, since the jury resolved the government's witness' testimony in his favor the government was estopped from using this same evidence to support the charge of possession of marijuana. The court of appeals disagreed and emphasized the necessity that the issues to be relitigated were resolved against the government in the first case. The court stated:

In criminal cases, the government is barred from relitigating a fact issue 'only if the jury could not rationally have based its verdict on an issue other than the one the defendant seeks to foreclose ... when a "fact is not *necessarily* determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue." ' *United States v. Lee*, 622 F.2d 787, 790 (5th Cir.1980) ... [Emphasis in original]

*Id.* at 508.

The defendant in *Kalish* also claimed that his conviction on the charges arising

from the East Texas smuggling operation was also barred by collateral estoppel. He claimed that his acquittal of the first conspiracy charge precluded the government from relitigating those allegations. In dealing with this contention the court of appeals added another requirement to the application of collateral estoppel that is particularly relevant to the case at bar. The court stated the general rule that, as we have already observed, collateral estoppel prevents a later prosecution "if the jury could not rationally have based its verdict on an issue other than the one the defendant seeks to foreclose." *Id.* The court then added:

> 'When a "fact is not *necessarily* determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue." *Id,* quoting *Adams v. United States,* 287 F.2d 701, 705 (5th Cir.1961) [emphasis in original].'

*Id.*

It is the defendant's burden to prove both that the issues are identical and that in reaching their verdict of not guilty in the first trial the jury had to resolve the contested fact in favor of the defendant.

In *Kalish,* the defendant did not properly carry his burden of proving that an issue crucial to the defendant's conviction had been earlier resolved in his favor.

The appellants in the case at bar have also failed to properly carry their burden. In any case in which collateral estoppel is urged, the most difficult issue to resolve is the identity of issues and ultimate facts. It is particularly difficult when, as in this case, there is only a general verdict of not guilty. Further, in the present case our task is made even more difficult because there is no record of appellants' first trial. Therefore, it is virtually impossible for us to state with any degree of reliability the basis of the jury's acquittal. It is, therefore, equally impossible to make any conclusive determination as to what issues were resolved in favor of the appellants, or accordingly, which facts that comprised the issues were decided adversely to the State.

There is ample authority to support a denial of the appellants' writs of habeas corpus on this basis alone. See 9 *ALR3d* 2035, "Modern Status of Doctrine of Res Judicata in Criminal Cases" (1966).

However, engaging in the speculation attendant to the discussion of the relevant features of the jury charge in the civil rights prosecution and the respective indictments in the murder prosecutions it is clear that the ultimate issues in the two cases are not identical. Thus, collateral estoppel is not applicable.

As a passing observation, it should be noted that when the Legislature enacted § 39.021(c), supra, and stated that "[t]his section shall not preclude prosecution for any other offense set out in this code" it obviously intended that one could be prosecuted for a civil rights offense and any other applicable violation of the law. Obviously, legislative intent, no matter how well intentioned, must yield to a defendant's constitutional rights if they conflict. When, however, the Legislature's intent can be effectuated without a deprivation of a defendant's constitutional rights it is this Court's duty to do so. See *Spradling v. State,* 773 S.W.2d 553 (Tex.Cr.App.1989).

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court.

CLINTON, J., concurs in the result.

MILLER, J., concurs with note: "I concur in the result reached in disposing of appellant's 'preliminary claim' (page 249). I would prefer a 'same offense' analysis more along the lines of *January v. State,* 695 S.W.2d 215 (Tex.App.—Corpus Christi 1985), approved by this Court in *January v. State,* 732 S.W.2d 632 (Tex.Cr.App.1987). I join the rest of the majority opinion."

TEAGUE, J., dissents.