Opinion issued May 25, 2006



     




In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01050-CR




EX PARTE LEMUEL ANTHONY MCNEIL, Appellant




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 987410




O P I N I O N

          Appellant, Lemuel Anthony McNeil, appeals the trial court’s denial of his
application for pretrial writ of habeas corpus brought pursuant to Tex. Code Crim.
Proc. Ann. art. 11.08 (Vernon 2005). Appellant was indicted on two charges, capital
murder and arson. See Tex. Pen. Code Ann. §§ 19.03(a)(8), 28.02(a)(2)(A) (Vernon
Supp. 2005). A trial by jury was held for the capital murder offense, and the jury
acquitted appellant of capital murder. The State is proceeding with its prosecution
for the arson offense. In his sole issue, appellant contends that the arson prosecution
is prohibited by his constitutional protections against double jeopardy via the doctrine
of collateral estoppel, because “the facts of the alleged arson were fully and fairly
litigated in the murder trial and the jury necessarily found that the fire was
accidentally set by its verdict of not guilty.” We conclude that the State is not
collaterally estopped from prosecuting the arson offense because the jury did not
necessarily determine whether appellant set the fire. Accordingly, we affirm.
Background
          Appellant and Stephanie Flournoy met each other at church and subsequently
engaged in a brief sexual relationship. As a result, appellant and Flournoy had a
child, the complainant. Before Flournoy gave birth to complainant, appellant sought
sole custody in family court. The custody hearing was held after complainant was
born, and the family court granted appellant visitation rights every Saturday from
2:00 p.m. until 5:00 p.m. On his first visitation, appellant and his friend Yvonne Reid
picked up the 13-month-old complainant and took her to appellant’s house, where
they were joined by Reid’s daughter, Heidi Miller. Complainant was fussy, so Reid
and Miller helped take care of her and then put her to sleep on a pallet on the floor in
front of appellant’s fireplace. Reid lit a fire in the fireplace because appellant told her
that he felt chilled, and then, Reid left the house at approximately 3:40 p.m., while the
baby was still lying on the floor and appellant was lying on the couch.
          At 5:39 p.m., appellant called for emergency assistance, but was unable to
speak because he had inhaled carbon monoxide and smoke. When emergency
medical technicians (EMT) arrived at appellant’s house, they discovered smoke
coming out of the front door and appellant lying face down in the front hallway,
holding the phone. They also found complainant lying on the pallet, dead.
          The State’s theory at trial was that appellant smothered complainant and then
intentionally started a fire to conceal the murder. Appellant maintained that
complainant’s death was caused by the fire, which started accidentally. The jury
subsequently acquitted appellant of capital murder.
          After the acquittal, appellant filed an application for pretrial writ of habeas
corpus alleging that the arson prosecution is prohibited by his constitutional
protections against double jeopardy via the doctrine of collateral estoppel. The trial
court entered judgment denying appellant’s requested relief.
Due Process and Collateral Estoppel
          Appellant contends that the State is precluded from pursuing its arson
prosecution because to do so would violate his constitutional protection against
double jeopardy via the doctrine of collateral estoppel. Specifically, appellant
contends that by acquitting appellant of capital murder, the jury necessarily found that
appellant did not intentionally set the fire or that, alternatively, “[o]nly an irrational
jury could conclude that [a]ppellant was not guilty of capital murder without also
finding that [a]ppellant did not intentionally cause the fire in this case.” The State
contends that it is not collaterally estopped from prosecuting the arson offense
because the jury’s verdict of acquittal did not resolve whether the fire was
intentionally set. Specifically, the State contends that complainant could have died
by means independent from whether appellant intentionally set the fire.
          Collateral estoppel is a corollary of the Fifth Amendment prohibition against
double jeopardy made applicable to the states through the Fourteenth Amendment. 
Ashe v. Swenson, 397 U.S. 436, 445, 90 S. Ct. 1189, 1195 (1970). Collateral estoppel
“means . . . that when an issue of ultimate fact has once been determined by a valid
and final judgment, that issue cannot again be litigated between the same parties in
any future lawsuit.” Ashe, 397 U.S. at 443, 90 S. Ct. at 1194. To determine whether
collateral estoppel bars a subsequent prosecution, a reviewing court must ascertain
“(1) exactly what facts were ‘necessarily decided’ in the first proceeding; and (2)
whether those ‘necessarily decided’ facts constitute essential elements of the offense
in the second trial.” Ex parte Taylor, 101 S.W.3d 434, 441 (Tex. Crim. App. 2002). 
          In Ashe v. Swenson, the Supreme Court stated the following:
[T]he rule of collateral estoppel in criminal cases is not to be applied
with the hypertechnical and archaic approach of a 19th century pleading
book, but with realism and rationality. Where a previous judgment of
acquittal was based upon a general verdict, as is usually the case, this
approach requires a court to examine the record of a prior proceeding,
taking into account the pleadings, evidence, charge, and other relevant
matter, and conclude whether a rational jury could have grounded its
verdict upon an issue other than that which the defendant seeks to
foreclose from consideration. The inquiry must be set in a practical
frame and viewed with an eye to all the circumstances of the
proceedings. Any test more technically restrictive would, of course,
simply amount to a rejection of the rule of collateral estoppel in criminal
proceedings, at least in every case where the first judgment was based
upon a general verdict of acquittal. 

397 U.S. at 444, 90 S. Ct. at 1194 (citations omitted). To determine whether a fact
was necessarily decided, reviewing courts must determine whether specific facts were
decided by the jury and if so, how broad the scope of the jury’s findings were in terms
of time, space, and content. Ex parte Watkins, 73 S.W.3d 264, 268 (Tex. Crim. App.
2002). “The mere possibility that a fact may have been determined in a former trial
is insufficient to bar relitigation of that same fact in a second trial.” Id. (emphasis in
original). A reviewing court must examine the entire trial record, including the
pleadings, the evidence, the charge, and the arguments of counsel “to determine ‘with
realism and rationality’ precisely which facts the jury necessarily decided and whether
the scope of its findings regarding specific historical facts bars relitigation of those
same facts in a second criminal trial.” Id. at 268–69. 
          In determining the scope of a fact barred by collateral estoppel, the “very fact
or point now in issue” must have been “determined in the prior proceeding.” Taylor,
101 S.W.3d at 441 (citations omitted). The issue must be precisely the same in both
cases; thus, the legal and factual situations must be identical. Id. Accordingly, the
defendant must “prove both that the issues are identical and that in reaching their
verdict of not guilty in the first trial[,] the jury had to resolve the contested fact in
favor of the defendant.” Ladner v. State, 780 S.W.2d 247, 258 (Tex. Crim. App.
1989).
          “A general verdict returned in the guilt phase of a criminal trial frequently
makes it difficult to determine precisely which historical facts a jury found to support
an acquittal.” Watkins, 73 S.W.3d at 269. “This task is considerably less difficult[,
however,] when a jury is given special fact issues to determine.” Id.
A.      Facts Necessarily Decided by the Jury in the Capital Murder Trial
          Appellant correctly asserts that during the trial of the capital murder offense,
the State focused on its theory that appellant intentionally set the fire to cover up
murdering complainant. The following transpired during trial. The State questioned
the venire panel during voir dire about reasons someone would intentionally set a
fire.


 During her opening statement, the State’s attorney focused on the murder of
complainant and the fire, by stating that “on the first visit that [appellant] had with
that baby[, he] smothered her and then set the house on fire to cover up what he had
done.” The State called eight witnesses, who testified about the cause of the fire, and
a majority of the State’s exhibits admitted at trial were evidence of the fire and its
cause. Finally, the State’s closing argument emphasized the theory that appellant
started the fire. The State’s attorney stated in closing argument, as follows:
All we know is that the defendant smothered her. Took the pillow, took
his hands, compress [sic] the force, occluded her airway and smothered
her. She didn’t die from this fire. She died before this fire. And the fire
tells you that the defendant did it and he tried to cover it up. And that’s
the significance of this fire. That’s the significance. It tells you what
the defendant was thinking. It tells you what his intentions were, what
he was trying to do. And for two hours he has time to think about what
he’s done and think about a way to cover it up.

          Despite the fact that the State’s theory at the capital murder trial involved
appellant intentionally setting the fire, we must determine whether the State is
collaterally estopped from prosecuting the arson offense based on what issues the jury
necessarily decided, not on whether the issue of appellant intentionally setting the fire
was emphasized during the trial of the offense. See Watkins, 73 S.W.3d at 268–69. 
          In the capital murder trial, the jury charge inquired whether appellant
“unlawfully, intentionally or knowingly cause[d] the death of [complainant] . . . by
smothering [her] with a deadly weapon, namely his hands; or . . . with an unknown
item.”


 The jury returned a general verdict of not guilty. The record shows that
complainant could have died in one of three or more ways: (1) by being smothered
with a deadly weapon before the fire started,


 as the State theorized at trial, or (2) by
being smothered after the fire started from lack of oxygen and inhalation of too much
carbon monoxide, or (3) from inhaling too much smoke, as appellant suggested at
trial. In order to acquit appellant, the jury thus necessarily determined that
complainant did not die from appellant smothering her with a deadly weapon, namely
his hands or an unknown item, and that complainant therefore died by other means. 
That fact cannot be relitigated and is barred by collateral estoppel. See id. at 269. 
B.      Essential Elements of Arson
          Although whether appellant intentionally started the fire was a disputed issue
in the capital murder trial, the State will only be collaterally estopped from
prosecuting arson now if the jury in the capital murder case was required to resolve
the contested fact of who started the fire. See Ladner, 780 S.W.2d at 258. The
essential elements of arson in this case include starting a fire, with intent to destroy
or damage any building, habitation, or vehicle, knowing that it is within the limits of
an incorporated city or town. Tex. Pen. Code Ann. § 28.02(a)(2)(A). Specifically,
appellant’s arson indictment asserts that he “unlawfully started a fire by igniting a
flammable liquid with the intent to destroy and damage a habitation located at 10211
Cherry Limb, knowing that the habitation was within the incorporated limits of a city,
namely Houston, Texas.”
          As set forth above, the issue necessarily decided by the jury in the capital
murder trial was whether appellant smothered complainant with a deadly weapon, and
the jury found by its verdict that he did not. See Ashe, 397 U.S. at 445, 90 S. Ct. at
1195. Therefore, the State is collaterally estopped from relitigating that issue. See
Watkins, 73 S.W.3d at 269. However, collateral estoppel does not bar the State from
prosecuting the defendant for an offense relating to complainant’s death.


 See Taylor,
101 S.W.3d at 445. 
          Here, by finding appellant not guilty of the offense of capital murder, the jury
only necessarily found that appellant did not smother complainant, which is not an
essential element of arson. See Watkins, 73 S.W.3d at 268; Ladner, 780 S.W.2d at
254. Furthermore, contrasting the allegations in the arson indictment with the
indictments and jury charge in the capital murder prosecution, it is apparent that the
issues are not identical. See Ladner, 780 S.W.2d at 256. Moreover, the jury’s verdict
in the capital murder trial could have been predicated upon the failure of proof of an
element of the capital murder offense that is not necessary to prove the offense of
arson. Id. at 255. Specifically, the jury’s capital murder acquittal could have been
based on the State’s inability to prove that the cause of death of complainant was by
smothering complainant with a deadly weapon, which is not applicable to the arson
prosecution. See id. In the capital murder trial, the verdict did not address whether
appellant started the fire. In other words, a rational jury could have grounded its
verdict only on the issue of whether appellant smothered complainant regardless of
whether he started the fire. We hold that the State is not collaterally estopped from
prosecuting appellant for arson.
          We overrule appellant’s sole issue.
 

Conclusion
          We affirm the trial court’s judgment denying habeas corpus relief.
 

                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Jennings, Alcala, and Price.



Publish. Tex. R. App. P. 47.2(b).