The STATE of Texas,

v.

**Jaime SAUCEDA, Jr., Appellee.**

Nos. 672–97, 673–97.

Court of Criminal Appeals of Texas, En Banc.

Nov. 18, 1998.

---

George McCall Secrest, Jr., Houston, for appellant.

John J. Harrity, III, Asst. Dist. Atty., Richmond, Matthew Paul, State's Atty., Austin, for State.

**OPINION**

PRICE, J., delivered the opinion of the Court, in which BAIRD, MEYERS, MANSFIELD, KELLER, HOLLAND and WOMACK, JJ., joined.

Rene Arismendez, Jr. and Rodney Arismendez were shot within seconds of each other as they sat in their vehicle. On April 3, 1995 the grand jury delivered two bills of indictment against Appellee for their murders. In Cause No. 26,768 Appellee was charged with the murder of Rene Arismendez Jr., by shooting him with a gun. In Cause No. 26,770 Appellee was charged with the murder of Rodney Arismendez, by shooting him with a gun. The state charged Appellee only as a principal in both cause numbers and trial in each cause number was to proceed separately. On December 4, 1995, trial proceeded in Cause No. 26, 768, the shooting of Rene Arismendez. The court's charge to the jury contained a charge only on the law of parties and the jury returned a verdict of "not guilty." [1] On January 16, 1996, the prosecution re-indicted Appellee in Cause No. 26,770A as to the complainant Rodney Arismendez. The re-indictment averred criminal culpability predicated on the law of parties. TEX. PEN.CODE ANN. § 7.02 (1994). Arguing collateral estoppel, Appellee filed a motion to dismiss and a pretrial application for a writ of habeas corpus. Both were granted by the trial court.

The Court of Appeals reversed the trial court's judgments, holding that the trial court did not have the authority to grant a motion to dismiss an indictment on the basis of collateral estoppel and that further prosecution of Appellee for the death of Rodney Arismendez was not barred by collateral estoppel. *State v. Sauceda,* Nos. 14–96–00287–CR, 14–96–00288–CR, 1997 WL 197889 (Tex. App.-Houston [14th Dist.] April 24, 1997, pet. granted) (not designated for publication), 1997 WL 197889. We granted Appellee's petition for discretionary review to consider the following:

1. Did the Court of Appeals err in holding that the district court did not have

---

1. Anthony Vasquez was also charged with the     two murders as a principal.

authority to dismiss the indictment based on constitutional principles of double jeopardy?

2. Did the Court of Appeals err in holding that the doctrine of collateral estoppel did not preclude further prosecution of the defendant herein who had been previously tried and acquitted of the offense of murder of one complainant which arose out of the same criminal episode and transaction as the second complainant?

3. Did the Court of Appeals err in considering arguments advanced by the prosecution for the first time during oral argument on appeal that had not been raised in the trial court below, nor in its brief in the Court of Appeals?

## Authority To Dismiss

As stated above, the trial judge granted Appellee's motion to dismiss and his application for a writ of habeas corpus, both of which were based on collateral estoppel grounds. The Court of Appeals reversed the judgments of the trial court, holding, *inter alia*, that there was no authority on which the trial court could base the dismissal. Because Appellee also brought an application for a writ of habeas corpus on these same grounds, however, the Court went on to address the merits of this issue. Therefore, since the merits of Appellee's collateral estoppel claim were reached by the Court of Appeals, we dismiss Appellee's first ground for review as improvidently granted, and proceed directly to the issue of collateral estoppel.

## Collateral Estoppel

Relying on the Supreme Court decision of *Ashe v. Swenson, supra,* the Court of Appeals considered the jury charge, including the application paragraph, in the first case, to determine what the state was required to prove and what the jury necessarily found. The trial court's charge to the jury included a charge on the law of parties:

Now if you find from the evidence beyond a reasonable doubt that on or about the 31st day of July, 1994, in Fort Bend County, Texas, Anthony Vasquez did intentionally or knowingly cause the death of an individual, Rene Arismendez by shooting him with a gun *and* that the defendant, Jaime Sauceda, Jr., then and there knew of the intent, if any of said Anthony Vasquez to shoot and kill the said Rene Arismendez, having a legal duty to prevent commission of the offense, *and* the said defendant acted with intent to promote or assist the commission of the offense by Anthony Vasquez by encouraging, aiding or attempting to aid Anthony Vasquez to commit the offense of causing the death of Rene Arismendez, you will find the defendant, Jaime Sauceda, Jr., guilty of murder as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty.

The Court of Appeals observed that the charge contained three fact issues. *Sauceda,* 1997 WL 197889, at *3. It reasoned that because the phrasing of the charge was in the conjunctive, the State was required to prove all three factors in order to secure a guilty verdict. *Id.* Thus, it posited, all that could be said regarding the acquittal in the first trial, cause no.26,768, was that the jury did not believe the State proved all three of the contested fact issues it was required to prove under the charge in that case. *Id.* However, in the second case, cause no. 26,-770A the re-indictment alleged the following:

Jaime Sauceda, Jr., . . . the Defendant, . . . did . . .

### Paragraph A

intentionally and knowingly shoot Rodney Arismendez with a firearm by acting with intent to promote and assist Jose Vasquez in the commission of the offense of murder, the defendant having formed said intent before and contemporaneously with the offense of murder, did then and there encourage, aid and attempt to aid Jose Vasquez in the commission of said offense of murder by driving Jose Vasquez to the scene of the murder and away from the scene of the murder.

#### Paragraph B

intentionally and knowingly shoot Rodney Arismendez with a firearm by acting with intent to promote and assist Jose Vasquez in the commission of the offense of murder, the defendant having formed said intent before and contemporaneously with the offense of murder, *did then and there fail to make a reasonable effort to prevent the commission of the offense of murder, when he had a legal duty to do so as a certified peace officer.* (Emphasis added)

Therefore, the Court of Appeals reasoned that in the second trial, the State would only have to prove two of the three previous allegations; it would not necessarily rely on a fact allegation which the State did not prove to the jurors' satisfaction in the first trial. *Id.*

#### Arguments of the Parties

Appellee argues that the issue necessary for the State's case in the second trial, whether Appellee acted as a party to Vasquez' acts, has been found in Appellee's favor in the first trial. Appellee asserts that in the first trial the state sought to convict Appellee as a party under § 7.02(a)(2) and § 7.02(a)(3), the same theories alleged in the second case. He claims that in the second trial the State must try to convince the jury to reach a conclusion directly contrary to that reached by the jury in the first trial. He argues that the Court of Appeal's rationale is incorrect, and maintains that the jury believed the State failed to shoulder its burden of proving culpability based on the law of parties. Appellee asserts that the jury considered two distinct theories of party culpability and rejected both of them. He further argues that by failing to object to the charge, the State accepted any greater burden of proof placed upon it by the charge.

The State argues that it is clear from the present state of the law that a defendant can be tried for as many victims as he has injured. And although the doctrine of collateral estoppel prevents the subsequent litigation of an issue from a "not guilty" verdict when it can be determined that the jury had only one narrow issue or element upon which to rest their verdict, the law of parties consti-

tutes a large body of legal and factual issues; thus, the State cannot be barred from prosecution unless the identical legal and factual issues are re-litigated.

#### Analysis

As stated earlier, the doctrine of collateral estoppel, although first developed in civil litigation, has been an established rule of federal criminal law for more than seventy-five years and is embodied within the constitutional protection against a defendant being placed in jeopardy twice for the same crime. *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. at 1194 (citing *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916)); *Ladner v. State,* 780 S.W.2d 247, 250 (Tex. Crim.App.1989) (citing *Ashe v. Swenson*). The United States Supreme Court explained that collateral estoppel simply means that "... when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. So, where a previous judgment of acquittal was based upon a general verdict, the court .must determine "... whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444, 90 S.Ct. at 1194. Therefore, if the prior acquittal could have been based on another issue, the second prosecution is not barred by collateral estoppel. *See Ladner,* 780 S.W.2d at 254 ("the question is ... whether ... [in the first trial] ... a 'rational jury' *necessarily* grounded its verdict upon an issue which the defendant seeks to foreclose from relitigation ... when a fact is not *necessarily* determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue") (citing *United States v. Gonzalez,* 548 F.2d 1185 (5th Cir.1977) & *Adams v. United States,* 287 F.2d 701 (5th Cir.1961)) (internal quotation marks omitted).

In *Ashe,* several armed men robbed six poker players in the home of one of the victims. *Ashe,* 397 U.S. at 437, 90 S.Ct. at 1191. Ashe was charged in separate counts with robbery of each of the six players. *Id.*

at 438, 90 S.Ct. at 1191. In his first trial, for the robbery of one of the victims, the proof that an armed robbery had occurred and that personal property had been taken from each of the victims was uncontroverted. *Id.* But, the testimony that Ashe had been one of the robbers was weak. *Id.* The trial judge instructed the jury that if it found that Ashe had been one of the participants in the armed robbery, then he was guilty under the law, as long as "any money" had been taken from the victim; it did not matter whether Ashe had personally robbed the victim. *Id.* at 439, 90 S.Ct. at 1191–1192. The jury returned a verdict of "not guilty due to insufficient evidence." *Id.* at 439, 90 S.Ct. at 1192. Six weeks later Ashe was brought to trial again, this time for the robbery of another participant in the poker game. *Id.* His motion to dismiss based on his previous acquittal was overruled. *Id.* At the second trial, the witnesses were for the most part the same, though this time their testimony was substantially stronger on the issue of Ashe's identity. *Id.* at 439–440, 90 S.Ct. at 1192. The case went to the jury on instructions virtually identical to those given at the first trial. *Id.* at 440, 90 S.Ct. at 1192. Ashe was found guilty and sentenced to 35 years in prison. *Id.*

After his appeals were exhausted, Ashe brought a habeas corpus proceeding in which his conviction was affirmed by both the Western District of Missouri and the Court of Appeals for the Eighth Circuit. *Id.* The United States Supreme Court granted certiorari and, to resolve this issue, it adopted the approach taken by federal courts and reasoned that when a previous judgment of acquittal is based upon a general verdict, as is usually the case, the reviewing court must "... examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter [s], and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444, 90 S.Ct. at 1194 (citing Mayers & Yarbrough, *Bis vexari: New Trials and Successive Prosecutions,* 74 HARV. L.REV. 1, 38–39 (1960), *Yawn v. United States,* 244 F.2d 235 (1957) & *United States v. De Angelo,* 138 F.2d

466(1943)) (internal quotation marks omitted). Using this approach, the Court found that the record in the prior proceeding was utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred. *Ashe,* 397 U.S. at 445, 90 S.Ct. at 1195. It determined that "[t]he single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers." *Id.* Because the only rational explanation for the verdict was that the jury found that Ashe was not one of the robbers, the Court held that a second prosecution for the robbery was wholly precluded. *Id.* at 445–447, 90 S.Ct. at 1195–1196.

■ In the present case, the Fourteenth Court of Appeals determined that the jury charge submitted in cause no. 26,768, set forth above, presented three factors for the State to prove: (1) Appellee knew of the intent, if any, of Vasquez to shoot and kill Rene Arismendez, *and* (2) Appellee had a legal duty to prevent the commission of the offense, *and* (3) Appellee acted with intent to promote or assist the commission of the offense by Vasquez by encouraging, aiding, or attempting to aid him to commit the murder of Rene Arismendez. *Sauceda,* 1997 WL 197889, at *3. It reasoned that, because the three factors were stated conjunctively rather than disjunctively, the State had to prove all three in order to secure a guilty verdict. *Id.* Conversely, the court pointed out, the jury could have returned a verdict of not guilty as a party to the murder of Rene Arismendez if any of those three factors was not met, i.e., Appellee did not know of Vasquez's intent, *or* he had no legal duty to prevent the offense, *or* he did not encourage, aid or attempt to aid Vasquez in the murder. *Id.* Thus, the court concluded, all that could be gleaned from the verdict in the first trial was that the jury did not believe the State proved all three of the contested fact issues it was required to prove under the charge in that case. *Id.* Because the charge was drafted in the conjunctive rather than the disjunctive, the theory or theories upon which the jury based its acquittal in the first trial could not be determined. *Id.* By contrast, based on the re-indictment in cause no. 26,770A set

forth above, the court noted that, at the second trial, a jury can convict Appellee as a party to the murder of Rodney Arismendez if it finds that Appellee (1) acted with requisite intent and (2) encouraged, aided and attempted to aid Vasquez in commission of the offense, *either* by (a) driving him to and from the murder scene, *or* (b) failing to make a reasonable effort to prevent the offense when he had a legal duty to do so. *Id.* Due to the re-indictment, at the second trial, the State will only have to prove two of the three previous allegations. *Id.* Given all of the above, the court observed, the State will not necessarily rely on a fact allegation that the jury rejected in the first trial. *Id.* Finally, the court held that because a jury in cause no. 26,678 could have grounded its verdict of acquittal on an issue other than that which Appellee seeks to foreclose in cause no. 26,-770A, collateral estoppel does not preclude prosecution of Appellee in cause no. 26,770A. *Id.*

As we stated earlier, the language of *Ashe v. Swenson* clearly requires a reviewing court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matters in order to conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to

foreclose from consideration. The Supreme Court further explained that:

> ... the rule in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality ... The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

*Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194.

In the present case, by focusing solely on the indictments and the jury charge in the first trial, the Court of Appeals failed to follow the procedure mandated by *Ashe.* There is no discussion in the Court of Appeals opinion regarding the evidence adduced in Appellee's first trial. Rather than focusing solely on the indictments and jury charge, the Court of Appeals should review the entire record and determine whether the jury could rationally have based its verdict upon an issue other than that which the Appellee seeks to foreclose from consideration.[2]

---

**2.** The dissent states that in *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), the Supreme Court overruled, sub silentio, Ashe v. Swenson. *Post,* at 652. In fact, *Watts* does nothing of the kind. However, this attempt to use *Watts* in order to assert that *Ashe v. Swenson* has been overruled does show the danger of taking words and sentences out of their contexts.

To briefly restate the facts in *Ashe,* at the defendant's first trial, the proof that an armed robbery had occurred and that personal property had been taken from each of the victims was uncontroverted. *Ashe,* 397 U.S. at 438, 90 S.Ct. at 1191. However, the testimony that the defendant had been one of the robbers was weak. *Id.* The jury returned a verdict of "not guilty due to insufficient evidence." *Id.* at 439, 90 S.Ct. at 1192. At Ashe's second trial, he was found guilty and sentenced to 35 years in prison. *Id.* at 440, 90 S.Ct. at 1192. The Supreme Court found that the record in the prior proceeding was utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred. *Id.* at 445, 90 S.Ct. at 1195. It determined that "[t]he single rationally conceiva-

ble issue in dispute before the jury was whether the petitioner had been one of the robbers." *Id.* Because the only rational explanation for the verdict was that the jury found that Ashe was not one of the robbers, the Court held that a second prosecution for the robbery was wholly precluded. *Id.* at 445–447, 90 S.Ct. at 1195–1196.

Conversely, in *Watts,* the Supreme Court held that a sentencing court may consider conduct of which the defendant had previously been acquitted, as long as that conduct was proved by a preponderance of the evidence. *Watts,* 519 U.S. at ——, 117 S.Ct. at 638. In holding that this did not violate the Double Jeopardy clause, the Court criticized the Court of Appeals, which had held that sentencing courts could *not consider* conduct of the defendants underlying charges of which they had been acquitted. The Supreme Court stated:

> The Court of Appeals ... misunderstood the preclusive effect of an acquittal, when it asserted that a jury 'rejects' some facts when it returns a general verdict of not guilty ... *The Court of Appeals failed to appreciate the significance of the different standards of proof that*

Appellee's second ground for review is sustained.

■ In his third and final ground for review, Appellee contends that the State should not be allowed to obtain a reversal on a basis it never advanced in the trial court nor in its brief. Appellee argues that the conjunctive / disjunctive theory was never raised by the State until oral argument before the Court of Appeals. We disagree. At the habeas corpus hearing, the State argued among other things:

> The Court's charge in this particular case has on the issue of law of parties Jaime Sauceda, Jr., then and there with the intent, if any, had to know of the intent if any, of Jose Vasquez to shoot and kill Rene Arismendez.
>
> Now, that's that's one issue right there. That's an element that the State has to prove. Okay. If we can't prove that intent, ... then the jury could have found the Defendant not guilty.
>
> Having a legal duty to prevent the commission of the offense was simply another element that we had to prove that was in there. It was not 7.02(a)(3). It was not the same Charge. And I'll come back to that issue.

But just addressing what we had to prove, there's another "and" in the Court's Charge "And the said Defendant acted with intent to promote or assist in the commission of the offense by," and this is where the language comes in, "encouraging, aiding, or attempting to aid Anthony Vasquez."

\* \* \*

But how can the Court believe that a general jury Verdict with multiple elements on the law of parties, Defense Counsel has already argued to this Court, Judge, we believe that under 7.02(a) you submitted a charge on acting with intent to promote or assist, and under 3, having a legal duty?

Well, how are you as a Judge supposed to know what the jury returned their Verdict on? What element didn't they find to be correct?

\* \* \*

Judge, the defense has simply admitted to you right now, here's a copy of the Court's Charge, they just told you that there were two theories.... And the

govern at trial and sentencing. We have explained that 'acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt...' As then-Chief Judge Wallace pointed out in his dissent ..., it is impossible to know exactly why a jury found a defendant not guilty on a certain charge.

> '[A]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences....'

Thus, contrary to the Court of Appeals' assertion, the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict of not guilty.

*Id.* at ——, 117 S.Ct. at 637 (emphases added) (citations omitted). Although some of the language in this quoted passage is rather broad, it is nevertheless clear that *Watts* is both factually and legally distinguishable from *Ashe*. In *Ashe*, there was only one real issue for the jury to decide in Ashe's first trial (whether Ashe was one of the robbers), and the jury's acquittal indicated that the prosecution had not proven that element beyond a reasonable doubt. Since this was again the only real issue to be decided in the second trial, and since the prosecution was again held to proof beyond a reasonable doubt, the Supreme Court held that it was precluded from relitigating this same issue in the second trial. In *Watts*, however, the standards of proof were different: reasonable doubt at the trial and preponderance of the evidence at sentencing. The acquittal of the defendants in the criminal trial did not foreclose the prosecution from relitigating the issue at sentencing, at which the standard of proof was different; the jury's acquittal at the criminal trial did not mean that the same jury would not have found the defendants had committed the same acts by a preponderance of the evidence. Seen in their proper contexts, it is not only clear that *Watts* does not overrule *Ashe*, but that the two are distinguishable and thus in harmony with one another.

Finally, one other comment must be made. *Ashe* is one of the key Supreme Court cases of contemporary Double Jeopardy jurisprudence, a case that has been cited by courts across the country hundreds of times. It would be both unreasonable and unwise for this Court to simply assume that in one case clearly distinguishable from *Ashe,* the Supreme Court has overruled *Ashe* and has done this without explicitly saying so.

Court can very simply look, there is one application paragraph.

Now, if you find from the evidence beyond a reasonable doubt, and there are "ands" all through this charge. By that I am bound to prove every element in that application paragraph.

If they wished another theory to be submitted or have them submitted separately, there should have been two application paragraphs.

Although the prosecutor's argument in the district court is somewhat disjointed, a reviewing court could reasonably construe it as having presented the conjunctive jury charge argument. Appellee's third ground for review is overruled.

### Conclusion

Based on Appellee's second ground for review, this case is remanded to the Court of Appeals so that it can adequately address the collateral estoppel issue in accordance with the procedure mandated in *Ashe v. Swenson. Cf. Carmona v. State,* 941 S.W.2d 949 (Tex. Crim.App.1997) (remand necessary because Court of Appeals opinion did not adequately address ground raised by appellant); *Williams v. State,* 790 S.W.2d 643 (Tex.Crim. App.1990) (remand necessary because law regarding the admissibility of out-of-court statements of a coconspirator was inadequately addressed).

OVERSTREET, J., concurred in the judgment only.

McCORMICK, P.J., filed a dissenting opinion.

I respectfully dissent. I would hold appellee's criminal prosecution for Rodney's murder following a "general verdict" of not guilty for Rene's murder is not barred by double jeopardy principles.

The Court's opinion states the applicable law as the "doctrine of collateral estoppel is embodied within the constitutional protection against a defendant being twice placed in jeopardy for the same crime." See *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[1] Consistent with this, I understand the constitutional principle applicable here and announced in *Ashe,* which was a "successive prosecution" case to be the rule of collateral estoppel "as embodied in the Fifth Amendment guarantee against double jeopardy" may preclude the government in a later criminal prosecution from relitigating ultimate facts that were decided or determined adversely to the government in an earlier criminal prosecution for a separate offense. See *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556, 573 (1993) (characterizing *Ashe* as holding the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy" may "bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts"); *Ashe,* 397 U.S. 436, 90 S.Ct. at 1194 (when an "issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit"). Since *Ashe's* rule of collateral estoppel is a component of federal constitutional double jeopardy jurisprudence, then, under principles of federalism, this rule an apply *only* to "successive prosecution" and "multiple criminal punishment" cases. See *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (double jeopardy protects against "multiple criminal punishments" for the "same offense"); *Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d at 568 (double jeopardy also protects against "successive prosecutions" for the "same criminal offense").[2]

1. In this case, it is undisputed the murders of Rene and Rodney are not the "same crime" for double jeopardy purposes. See *Ashe,* 397 U.S. 436, 90 S.Ct. at 1195.

2. This is the reason why cases such as this Court's recent majority opinion on original submission in *State v. Brabson* do not implicate the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeop-

ardy" since these cases are not "successive prosecution" or "multiple criminal punishment" cases, and why our Legislature can, for example, expressly provide, without violating double jeopardy principles or *Ashe,* that the determination of an administrative judge in a civil administrative proceeding to revoke a person's driver's license "does not preclude litigation of the same or similar facts in a [later] criminal prosecution."

After a judgment of acquittal based on a "general verdict" of not guilty in a prior criminal prosecution,[3] *Ashe's* constitutional rule of collateral estoppel requires a court in a later criminal prosecution to determine whether a defendant has sustained his burden " 'to demonstrate that the [ultimate] issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.' " See *Schiro v. Farley*, 510 U.S. 222, 114 S.Ct. 783, 791, 127 L.Ed.2d 47 (1994) (burden is on defendant to establish his collateral estoppel claim); *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990) (constitutional rule of collateral estoppel applies only to "ultimate" issues). This usually requires a court to " 'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " See *Ashe*, 397 U.S. 436, 90 S.Ct. at 1194. *Ashe* further states that any "test more technically restrictive" would "amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Ashe*, 397 U.S. 436, 90 S.Ct. at 1194.

Based primarily on the jury instructions in the prior criminal prosecution in case number 26,678 (and in particular the law of parties instruction set out in the conjunctive), the Court of Appeals decided the jury could have grounded its verdict of acquittal in that criminal prosecution on an issue other than that which appellee seeks to foreclose in case number 26,770A. I would hold the Court of Appeals fulfilled its duty under *Ashe* and affirm its judgment on this basis. Appellee

has not demonstrated " 'the issue whose resolution he seeks to foreclose was actually decided' " in case number 26,678 because there are " 'any number of possible explanations for the jury's acquittal verdict' " in case number 26,678. See *Schiro*, 510 U.S. 222, 114 S.Ct. at 791 (defendant failed to satisfy his burden of establishing his constitutional collateral estoppel claim because there were " 'any number of possible explanations for the jury's acquittal verdict.' " in the prior criminal prosecution).

The Court's opinion does not take issue with the Court of Appeals' substantive analysis that the criminal prosecution in case number 26,770A is not barred under constitutional collateral estoppel principles based on an examination of "the indictments and the jury charge" in case number 26,678. Rather the Court's opinion says the Court of Appeals "failed to follow the procedure mandated by" *Ashe* "by focusing solely on the indictments and the jury charge." The Court's opinion remands the case to the Court of Appeals to consider the "evidence adduced in Appellee's first trial."

United States Supreme Court precedents do not necessarily require a court to consider the "evidence adduced" in the first trial especially when the court can appropriately reject a defendant's constitutional collateral estoppel claim based on other factors. For example, in *Schiro*, the United States Supreme Court stated it was unnecessary for it to consider the "evidence adduced" in the first trial when it was able, as the Court of Appeals was in this case, to reject the defendant's constitutional collateral estoppel claim based on the jury instructions and verdict forms. See *Schiro*, 510 U.S. 222, 114 S.Ct. at 791–92. The Court's opinion errs to the extent it holds a court is always required to

See Texas Transportation Code, Section 724.048(a)(3); *State v. Brabson*, 976 S.W.2d 182 fn. 2 (Tex.Cr.App.1998) (opinion on original submission); *Ex parte Tharp v. State*, 935 S.W.2d 157, 161 (Tex.Cr.App.1996) (administrative suspension of driver's license is not criminal "punishment" for double jeopardy purposes). The Supreme Court has never held the rule of collateral estoppel "as embodied in the Fifth Amendment guarantee against double jeopardy" applies in these types of cases apparently because doing

so would be inconsistent with principles of federalism.

**3.** The verdict at issue in *Ashe* was not a "general verdict;" it was a verdict of "not guilty due to insufficient evidence." See *Ashe*, 397 U.S. 436, 90 S.Ct. at 1192. For reasons more fully set out later in this opinion the differences between these two types of verdicts may be legally significant for federal constitutional collateral estoppel purposes.

consider the "evidence adduced" in the first trial in analyzing a constitutional collateral estoppel claim. See *Schiro*, 510 U.S. 222, 114 S.Ct. at 791.

The Court's opinion also fails to discuss the United States Supreme Court's decision in *United States v. Watts* which was decided after *Ashe* and *Schiro*. See *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, —— L.Ed.2d —— (1997). Although *Watts* is not a double jeopardy case, I believe it has significant bearing on the double jeopardy/collateral estoppel issue presented in this case.

*Watts* was a federal sentencing guidelines case in which the government sought to enhance the defendant's sentence based on conduct for which the defendant previously had been acquitted. See *Watts*, 519 U.S. 148, 117 S.Ct. at 634. The Supreme Court decided that " 'an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.' " See *Watts*, 519 U.S. 148, 117 S.Ct. at 637; see also *Dowling*, 493 U.S. 342, 110 S.Ct. at 671.

However, *Watts* also recognized "it is impossible to know exactly why a jury found a defendant not guilty on a certain charge." *Watts*, 519 U.S. 148, 117 S.Ct. at 637. In other words, "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty." *Id.*

This makes the "standard of proof" in the "subsequent action" of no consequence since it still cannot be said the jury's "general verdict" of not guilty in the prior action "necessarily rejected" or "necessarily" found any facts that the government seeks to litigate in the subsequent action. See *id.*

Remember *Ashe* applies only when an "issue of ultimate fact has once been determined" by a jury. See *Ashe*, 397 U.S. 436, 90 S.Ct. at 1194 (when an "issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties"). And remember in *Ashe* the Court's view of the record was the jury's verdict of "not guilty due to insufficient evidence" meant the jury "determined by its verdict that the [defendant] was not one of the robbers." See *Ashe*, 397 U.S. 436, 90 S.Ct. at 1195; but see *Ashe*, 397 U.S. 436, 90 S.Ct. at 1204, 1206 (Burger, C.J., dissenting) (noting the Court's opinion omitted "some relevant facts" and explaining why a jury could have acquitted the defendant in the first case without necessarily deciding or determining he was "not one of the robbers").[4]

*Watts* seriously undermines *Ashe*. *Ashe* says in cases like this that courts should undertake to determine what ultimate facts the jury determined or rejected by returning a "general verdict" of not guilty. However, *Watts* says "it is impossible to know exactly why a jury found a defendant not guilty" and "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty." *Watts*, 519 U.S. 148, 117 S.Ct. at 637; see also *Schiro*, 510 U.S. 222, 114 S.Ct. at 791 (defendant failed to satisfy his burden of proving his constitutional collateral estoppel claim because there were " 'any number of possible explanations for the jury's acquittal verdict' " in the prior proceeding). In other words, *Watts* says it is impossible to do what *Ashe* requires.

Therefore, I have concluded *Watts* implicitly amounts "to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." Cf. *Ashe*, 397 U.S. 436, 90 S.Ct. at 1194; see *Ashe*, 397 U.S. 436, 90 S.Ct. at 1204–06 (Burger, C.J., dissenting) ("collater-

4. The jury's verdict of "not guilty due to insufficient evidence" in *Ashe* probably made it easier to decide the jury necessarily found the defendant was "not one of the robbers" than had the jury returned a "general verdict" of not guilty. See *Ashe*, 397 U.S. 436, 90 S.Ct. at 1195 (jury determined by its verdict of "not guilty due to insufficient evidence" that defendant was "not one of the robbers"). When a jury returns a "general verdict" of not guilty, it really is impos- sible to know the basis of the jury's decision or what facts the jury found, determined or reject- ed. See *Watts*, 519 U.S. 148, 117 S.Ct. at 637 (an "acquittal is not a finding of any fact"). For all we know the jury may have engaged in "jury nullification" even though it found all facts nec- essary to convict. See also *id.* (an "acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt").

al-estoppel concept—originally a product only of civil litigation—is a strange mutant as it is transformed to control this criminal case"). *Watts* has overruled *Ashe sub silentio*. Therefore, I also would resolve this case by simply holding appellee is not "being twice placed in jeopardy for the same crime."

I respectfully dissent.