Motion for Rehearing Overruled, Opinion of July 11, 2002, Withdrawn;
Affirmed as Modified in Part, Reversed and Rendered in Pa









Motion for
Rehearing Overruled, Opinion of July 11, 2002, Withdrawn; Affirmed as Modified
in Part, Reversed and Rendered in Part, and Majority and Dissenting Opinions on
Motion for Rehearing filed October 3, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00105-CV

____________

 

TEXAS A&M UNIVERSITY SYSTEM, DR. WILLIAM J.
MERRELL, IN HIS OFFICIAL CAPACITY AS PROFESSOR OF OCEANOGRAPHY, DR. WILLIAM
EVANS, IN HIS OFFICIAL CAPACITY AS PROFESSOR OF MARINE BIOLOGY, and DR. JAMES
M. McCLOY, IN HIS OFFICIAL CAPACITY AS DEPARTMENT
HEAD AND PROFESSOR OF MARITIME ADMINISTRATION, Appellants

 

V.

 

LEON LUXEMBURG, Appellee

 



 

On Appeal from the
212th District Court

Galveston
County, Texas

Trial Court Cause
No. 94-CV-1093

 



 

M A J O R I T Y  
O P I N I O N   O N

M O T I O
N   F O R   R E H E A R I N G








We
withdraw our opinion of July 11, 2002, and substitute the following
opinion.  A university professor sued the
university and several administrators, alleging that his constitutional rights
were violated in connection with the termination of his employment.  Following a jury trial, the trial court
entered judgment in favor of the professor, ordering the university to
reinstate him to his former position and awarding him back pay, attorney=s fees, and costs.  The university and administrators
appealed.  We affirm in part and reverse
and render in part.

                                                  I. 
Factual Background

In 1989,
Leon Luxemburg was hired as a part-time instructor in the Maritime College of
Texas A&M University at Galveston (ATAMUG@). 
In 1990, Luxemburg began discussing a possible tenure-track position
with Larry Slotta, the Director of Engineering
Programs at TAMUG.  In two separate
letters from Slotta to Luxemburg, Slotta
outlined their discussions about the terms of Luxemburg=s employment.  Both letters indicated that Luxemburg would
receive a nine-month salary of $41,000, two-thirds of which would be funded by
TAMUG, with the remaining one-third to be provided by Luxemburg=s research funds.  On August 24, 1990, Luxemburg acknowledged
receipt of the ATerms and Conditions of Faculty Appointment,@ notifying Luxemburg of his
appointment as a non-tenured assistant professor for a nine-month period from
September 1, 1990, to May 31, 1991. 
Under ASalary,@ this document had a typewritten
notation of A($4,555.56 mo),@ which equates to $41,000 over nine
months; however, the document does not mention the previously discussed
division of the sources for Luxemburg=s salary.  Luxemburg claims he understood this to mean
that his monthly salary was, in fact, guaranteed.  On September 1, Slotta
submitted to his superiors a form budget request for funding of Luxemburg=s salary of $4,555.56 per month.  According to this form, TAMUG would pay 100%
of Luxemburg=s salary through the end of November,
at which time TAMUG=s contribution would drop to 57.14% and a separate account,
consisting of research funds acquired by Luxemburg, would provide the other
42.86%.








Luxemburg
and Slotta began having severe personal conflicts
almost immediately after the school year started.  In November 1990, Luxemburg submitted his
first research proposal for Slotta=s approval.  According to Luxemburg, after Luxemburg
signed the proposal, Slotta altered portions to
overstate costs and falsely claim participation by minority students before
submitting the proposal to the National Science Foundation (ANSF@). 
Luxemburg submitted a written grievance to William Evans, Dean of TAMUG=s Maritime College, accusing Slotta of fraud. 
Luxemburg also alleged that Slotta physically
assaulted him and subjected him to public humiliation.

In
January 1991, Luxemburg received two memos from TAMUG=s controller indicating that, because
Luxemburg had not yet contributed any research funds, he should not have
received the 42.86% of his December salary that was to be contributed from such
funds.  Accordingly, Luxemburg was
informed that his paycheck for January would be reduced to reflect this
overpayment, and that all later checks would only be for 57.14% of his monthly
salary until he had supplied the necessary research funds.  Luxemburg claims this Apay cut@ was in fact retaliation for his
grievance against Slotta.

On April
8, 1991, Luxemburg submitted a written grievance to Dr. James McCloy, TAMUG=s Vice President for Academic
Affairs, accusing Evans of suppressing evidence of Slotta=s misconduct, refusing to act on
Luxemburg=s complaints, and intimidating
Luxemburg to prevent him from complaining. 
Around this same time, Luxemburg sent a note to NSF requesting removal
of his name from the November proposal. 
This note stated that Slotta added Afraudulent statements@ as well as Aincompetent statements@ to the proposal without Luxemburg=s consent.  On April 10, William Merrell, TAMUG=s President, sent Luxemburg a memo
urging Luxemburg to follow university procedures for withdrawing his name from
the proposal and criticizing his actions as a Aserious breach of proper professional
conduct.@ 
In an April 16 memo to Merrell, Luxemburg accused him of interfering
with the grievance procedure and requested that Merrell=s charges of professional misconduct
be resolved as part of that procedure.








On May
8, 1991, Luxemburg was notified that his appointment had been renewed for the
1991-92 school year.  On May 10, McCloy issued his findings and recommendations with respect
to Luxemburg=s grievances.  Luxemburg informed Merrell that he disagreed
with McCloy=s conclusions and requested a meeting
of the Tenure Advisory Committee to review his grievances, along with an
additional complaint against McCloy for advising
Evans not to take action against Slotta for the
alleged physical assault.  The Tenure
Advisory Committee issued its conclusions, and Merrell ultimately instructed McCloy to issue reprimands to Slotta
and Evans.

In
January 1992, TAMUG merged with Texas A&M University at College Station and
became part of the Texas A&M University System (ATexas A&M@). 
Merrell=s position as President was
eliminated, and David Schmidley was appointed Campus
Dean and Chief Executive Officer of TAMUG. 
During both the 1991-92 and 1992-93 school years, Luxemburg continued
working as an assistant professor, and his salary was funded 100% by TAMUG.

In May
1993, McCloy and Luxemburg=s department head, Ted Chang, both
recommended to Schmidley that Luxemburg=s contract should not be renewed.  On May 28, 1993, Schmidley
sent Luxemburg an official notice of non-reappointment, informing Luxemburg
that his appointment as assistant professor would not continue after May 31,
1994.  Although Luxemburg was paid his
full salary for the 1993-94 school year, his duties no longer included teaching
students at TAMUG.

                                             II. 
Procedural Background

                                                            A.  The Federal Suit








In
November 1992, while still employed at TAMUG, Luxemburg filed suit in federal
court alleging retaliation based on his opposition to unlawful employment
practices and deprivation of his rights under the United States
Constitution.  Luxemburg named Texas
A&M as a defendant, along with Slotta, Merrell,
Evans, and McCloy, in both their individual and
official capacities.  Luxemburg amended
his complaint in May 1993 to add state constitutional violations and claims for
discrimination based on religion, race, and national origin.  In December 1993, the court dismissed all
claims against the defendants in their official capacities, as well as
Luxemburg=s constitutional due-process
claim.  In September 1994, the court
granted the defendants= motion for summary judgment, dismissed Luxemburg=s remaining claims, and entered a
final judgment, which was affirmed by the Fifth Circuit without opinion.  See Luxemburg v. Texas A&M
Univ. Sys., 863 F. Supp. 412 (S.D. Tex. 1994), aff=d mem., 59 F.3d 1240 (5th Cir. 1995).

                                                              B.  The State Suit

On
February 22, 1994, while his federal suit was still pending, Luxemburg filed a
second suit in state court, alleging retaliation and deprivation of his rights
under both the United States and Texas Constitutions.  Luxemburg=s state suit named the same five
defendants as in federal court, plus Schmidley.  Again, each individually named defendant was
sued in both his individual and official capacities.  Luxemburg=s only requested relief was monetary
damages.  In September 1997, the trial
court granted a partial summary judgment for appellants, leaving only Astate claims against Texas A&M@ in the suit.  The trial court set the case for trial on
February 22, 1999.  On January 28, 1999,
Texas A&M filed a plea to the jurisdiction, alleging (1) Luxemburg=s contract claims are barred by
sovereign immunity and (2) there is no recognized cause of action for damages
to enforce state constitutional rights. 
One week later, Luxemburg filed an agreed motion for continuance.  The trial court granted the continuance and
re-set trial for June 1, 1999.








On March
8, 1999, Luxemburg filed an amended petition in which he abandoned his claims
for monetary damages and sought declaratory and equitable relief, as well as
attorney=s fees, against Texas A&M and Slotta, Merrell, McCloy, Evans,
and Schmidley in their official capacities only.  Luxemburg proceeded to trial against Texas
A&M, Merrell, McCloy, and Evans.[1]  The jury found (1) Luxemburg had a property
interest in his employment, (2) Luxemburg was denied procedural due course of
law when his employment ceased, (3) Luxemburg was denied substantive due course
of law when his employment ceased, (4) appellants= conduct was a proximate cause of
Luxemburg being deprived of a protected liberty interest, and (5) Luxemburg=s protected speech was a substantial
or motivating factor for the employment actions taken against him.  Following several post-trial motions, the
court ultimately entered an amended final judgment in which the court (1)
awarded Luxemburg $275,000 in back salary and attendant benefits, $120,000 in
attorney=s fees, and $2,500 in costs; (2)
ordered Texas A&M to reinstate Luxemburg to his former position or a
comparable position Aas if he . . . had not been suspended and/or terminated@; and (3) restrained Texas A&M
from directly or indirectly violating Luxemburg=s constitutional rights by wrongfully
interfering with Luxemburg=s performance of his duties, although the court stated that
Texas A&M retains the right to instruct and supervise Luxemburg in a
reasonable manner and may discipline, suspend, non-renew, or terminate
Luxemburg for lawful reasons or just cause and if lawful procedures are
followed.  This appeal followed.

                                                              III. 
Discussion

                                                                A.  Res Judicata

In their
second issue, appellants contend the claims submitted to the jury are barred by
the doctrine of res judicata,
or claim preclusion.  Because the first
lawsuit was decided in federal court, federal law controls the determination of
whether res judicata bars
the present state court proceeding.  San
Antonio Sch. Dist. v. McKinney, 936 S.W.2d 279,
281 (Tex. 1996).  Under federal law, the
doctrine of res judicata
will apply if

(1)             
the parties in
both suits are identical,

(2)             
the prior
judgment was rendered by a court of competent jurisdiction,

(3)             
there is a final
judgment on the merits, and

(4)             
the
same cause of action is involved in both cases.








Id. 
Even if these four requirements are established, however, res judicata will not apply if
the federal court (1) lacked jurisdiction over the state court claims or (2)
possessed jurisdiction over those claims but would clearly have declined to
exercise that jurisdiction as a matter of discretion.  Id.

Unless
expressly waived, the Eleventh Amendment prevents the federal courts from
exercising jurisdiction over claims against a state or a state agency.  See, e.g., Pennhurst
State Sch. & Hosp. v. Halderman,
465 U.S. 89, 99-100, 104 S. Ct. 900, 907-08 (1984).  This protection extends to officials of a
qualifying state agency who are sued in their official capacities.  See Will v. Michigan Dep=t of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989).  In his state-court pleadings, Luxemburg
alleged that appellants violated the Texas Constitution by (1) depriving him of
Aprotected liberty interests and
property interests without due course of law@ and (2) retaliating against him for Ahaving exercised his constitutionally
protected rights.@  In the federal district
court, appellants successfully argued that, with the exception of Luxemburg=s discrimination claims arising under
Title VII, the federal court did not have jurisdiction over claims against
Texas A&M and the individual defendants in their official capacities.  Because the federal court lacked jurisdiction
over Luxemburg=s claims in the present suit, we must
conclude that res judicata
does not apply.  McKinney, 936
S.W.2d at 281.  Appellants= second issue is overruled.

                                                         B.  Collateral Estoppel

Appellants
also argue that the doctrine of collateral estoppel,
or issue preclusion, bars Luxemburg=s claims.  Defensive collateral estoppel
may be used to prevent relitigation by a plaintiff of
issues previously lost in another proceeding. 
See Johnson & Higgins of Tex., Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 519 (Tex. 1998).  Because Luxemburg was a party in both
proceedings, the critical issues concern whether (1) the facts sought to be
litigated in the second action were fully and fairly litigated in the first
action and (2) those facts were essential to the judgment in the first action.  Id.








                                                            1.  The First Lawsuit

We must
review the issues decided in the federal court to determine whether those
findings preclude Luxemburg=s claims in the state court. 
In his Second Amended Complaint in federal court, Luxemburg asserted
claims for (1) misrepresentation, (2) false-light invasion of privacy, (3) A[d]eprivation
of liberty interest[s],@ (4) violation of the Texas Whistleblower Act, and (5)
discrimination based on race, national origin, and religion.  Luxemburg identified in his complaint the
following four liberty interests of which he was allegedly deprived: (1) Afreedom to act responsibly in his
profession,@ (2) his employment, (3) Afreedom to speak out on matters of
general concern,@ and (4) Afreedom from retaliation.@ 
The federal court treated these claims collectively as claims under 42
U.S.C. ' 1983 for deprivation of rights under
the First and Fourteenth Amendments to the United States Constitution.  See 42 U.S.C. ' 1983 (1994).

As noted
above, the federal court dismissed for lack of jurisdiction all claims against
Texas A&M and the individual defendants in their official capacities except
for Luxemburg=s discrimination claims.  The individual defendants also sought to
dismiss Luxemburg=s ' 1983 claims on the basis of qualified immunity.  The federal court first examined Luxemburg=s free-speech-deprivation claim and
concluded that Luxemburg had pleaded sufficient facts to raise a ' 1983 claim against Slotta, Merrell, and McCloy.  Turning to Luxemburg=s claims under the Fourteenth
Amendment, the court initially noted that ALuxemburg=s complaint nowhere claims that he
has been denied procedural due process.@ 
With respect to his substantive-due-process claims, the federal court
concluded the facts Luxemburg alleged in his complaint as stigmatizing were
insufficient as a matter of law to support a ' 1983 claim, and that Luxemburg did
not otherwise establish the deprivation of a recognized liberty interest.  Accordingly, the court granted the individual
defendants= motion to dismiss Luxemburg=s Fourteenth Amendment ' 1983 claims.  Thus, Luxemburg=s only remaining claims were (1) his ' 1983 claim based on his First
Amendment right to free speech, (2) his discrimination claims under Title VII,
and (3) his state-law claims.








Luxemburg
voluntarily dismissed his state-law claims, and the individual defendants moved
for summary judgment on the two remaining federal claims.  With respect to his discrimination claims,
the federal court concluded that Luxemburg failed to make a prima facie case of
retaliatory discrimination.  In reaching
this conclusion, the court interpreted Luxemburg=s complaint as alleging two acts of
discrimination: Slotta=s negative evaluation of Luxemburg
for failing to attend a function on a Saturday, when Luxemburg was observing
the Jewish Sabbath; and the reduction in Luxemburg=s pay during the 1990-91 school year.
 On the ' 1983 claim, the district court found
that Luxemburg Ahas shown no evidence that the Defendants acted with an
improper motive and thus that no genuine issue of material fact exists.@ 
Luxemburg, 863 F. Supp. at 422. 
Again, however, the court=s analysis of the defendants= summary judgment evidence focused on
Luxemburg=s claim that his salary had been
reduced in retaliation for his protected speech.  The court concluded that ATAMUG=s decision was based on unambiguous,
pre-existing agreements, not in retaliation for Luxemburg=s constitutional right to free
speech.@ 
Id. at 422-23.

                                                          2.  The Second Lawsuit

In the
present case, Luxemburg presented to the jury constitutional claims based on
(1) denial of due course of law and (2) retaliation against protected
speech.  Appellants contend that these
issues were fully and fairly litigated in Luxemburg=s first suit.








We first
consider whether Luxemburg should be estopped from
raising his due-course claim.  See
Tex. Const. art. I, ' 19.[2]  Due course of law exists to prevent the State
from depriving persons of liberty and property without notice and hearing.  Skelton v. Commission for Lawyer
Discipline, 56 S.W.3d 687, 693 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  The first three questions in the
jury charge asked whether Luxemburg had a property interest in his employment
with TAMUG and whether he was denied procedural and substantive due course of
law when his employment ceased. 
Appellants contend these factual issues were fully and fairly litigated
in Luxemburg=s first lawsuit.  In that first suit, however, Luxemburg did
not assert any constitutional violations stemming from the loss of his
employment.  Luxemburg=s only claims relating to his
employment in the federal case concerned Slotta=s negative evaluation and the alleged
reduction in his salary.  In its order
dismissing Luxemburg=s claims in part, the court specifically stated that
Luxemburg=s complaint Adoes not allege . . . that
Luxemburg possesses a property interest in his job.@ 
Thus, the federal court did not address whether Luxemburg had a
constitutionally protected property interest in his continued employment or
whether Texas A&M deprived Luxemburg of due course of law when it decided
not to renew his employment.  Therefore,
Luxemburg was not estopped from litigating these
issues in the second lawsuit.








Question
number 4 in the jury charge addresses the alleged deprivation of a protected
liberty interest by the publication of stigmatizing charges against Luxemburg.  A comparison of Luxemburg=s complaint in the federal lawsuit
and his petition in the state lawsuit reveals that the allegedly stigmatizing
charges are the same in both.  In the
federal suit, the district court found that Luxemburg=s alleged facts were insufficient to
establish a constitutional violation because he failed to establish that the
accusations against him were made under the color of the accusers= official duties.  However, even when the allegedly stigmatizing
charges are not themselves made by a governmental entity, an individual=s liberty interest may be affected if
a state employee is terminated based on those charges.  See Board of Regents of State Colls. v. Roth, 408 U.S. 564, 573, 92 S. Ct. 2701, 2707
(1972) (concluding that a state=s decision not to rehire a non-tenured professor, without
more, did not implicate any liberty interest, but stating that a Adifferent case@ would be presented if the state had Abase[d] the nonrenewal
of his contract on a charge, for example, that he had been guilty of
dishonesty, or immorality@).  As we note above,
Texas A&M=s decision not to reappoint Luxemburg
after the 1993-94 school year was apparently never an issue in the federal
lawsuit.  Accordingly, the federal court
never addressed whether Texas A&M=s nonrenewal
decision was related to the alleged stigmatizing charges or whether Luxemburg
was deprived of a liberty interest by being refused a name-clearing
hearing.  We conclude Luxemburg was not estopped from presenting these issues to the jury.

Next, we
review whether Luxemburg should have been precluded from bringing his
free-speech claim.  See Tex. Const. art. I, ' 8. 
In Question 5, the jury was asked whether Luxemburg=s protected speech Awas a substantial or motivating factor
for the employment actions taken against him.@ 
Nowhere does the charge specify the Aemployment actions@ to which this question refers.  Luxemburg asserts that the Aemployment actions@ include his nonrenewal
by TAMUG and that the federal court never addressed the factual issue of
whether he was terminated in retaliation for exercising his right to protected
speech.  Appellants respond that
Luxemburg=s pleadings in the state suit do not
allege termination as an Aemployment action@ taken against him, and thus
Luxemburg=s claims were identical in both
suits.  Although the recitation of facts
in Luxemburg=s petition does not mention his
termination, under the heading AEquitable Relief,@ Luxemburg states that he Aseeks reinstatement to his former
position.@ 
Furthermore, Luxemburg=s termination is clearly an issue with respect to other
questions in the jury charge.  As used in
Question 5, Aemployment actions@ could reasonably be interpreted to
include the decision not to renew Luxemburg=s appointment.  Because appellants did not object to this
language, and because the federal court did not address whether Luxemburg=s employment was improperly
terminated in violation of his right to free speech, we conclude that Luxemburg
was not estopped from raising this issue in his state
lawsuit.

None of
the jury issues presented in Luxemburg=s second lawsuit were barred by the
doctrine of collateral estoppel.  We overrule appellants= first issue.

                                                       C.  Statute of Limitations








In their
third issue, appellants argue that Luxemburg=s claims are barred by the statute of
limitations.  The statute of limitations
for an alleged constitutional violation is two years.  See Jackson v. Houston Indep. Sch. Dist., 994 S.W.2d
396, 402 (Tex. App.CHouston [14th Dist.] 1999, no pet.); Tex. Civ. Prac. & Rem. Code Ann. ' 16.003(a) (Vernon Supp. 2002).  According to appellants, Luxemburg=s cause of action accrued no later
than June 2, 1993, the date he allegedly received notice that he would not be
reappointed.  Luxemburg filed his original
petition on February 22, 1994, well within the limitations period.  However, Luxemburg did not assert a claim in
equity for reinstatement until he filed an amended petition on March 5, 1999.  Thus, appellants contend Luxemburg=s equitable claim is barred by
limitations.

Luxemburg
responds that his amended pleading is entitled to the filing date of his
original petition under section 16.068 of the Texas Civil Practice and Remedies
Code, which provides as follows:

If a filed pleading relates to a
cause of action . . . that is not subject to a plea of limitation when the
pleading is filed, a subsequent amendment or supplement to the pleading that
changes the facts or grounds of liability or defense is not subject to a plea
of limitation unless the amendment or supplement is wholly based on a new,
distinct, or different transaction or occurrence.

Tex.
Civ. Prac. & Rem. Code Ann. ' 16.068 (Vernon 1997).  We apply a two-pronged test to determine
whether an amended pleading relates back to an earlier pleading for purposes of
applying limitations.  Cooke v. Maxam Tool & Supply, Inc., 854 S.W.2d 136, 141
(Tex. App.CHouston [14th Dist.] 1993, writ denied).  First, the original cause of action asserted
in the first pleading must not have been time-barred when filed; and second,
the amended pleading which changes the grounds of liability must not be wholly
based on a new, distinct, or different transaction or occurrence.  Id. 
Luxemburg=s amended petition easily satisfies both prongs of this test,
and thus is not subject to a plea of limitation.  Appellants= third issue is overruled.

 








                                                   D.  Sufficiency of the Evidence

In their
fifth issue, appellants contend there is insufficient evidence to support the
jury=s verdict.  With respect to Luxemburg=s due-course-of-law claim, appellants
argue (1) there is no evidence that Luxemburg had an objectively reasonable
expectation of continued employment, (2) there is no evidence that appellants
made any false, public, or stigmatizing charges against Luxemburg, and (3)
there is no evidence that Luxemburg requested a hearing to clear his name and
that such hearing was denied him.  On his
free-speech claim, appellants contend the evidence conclusively establishes that
the decision not to renew Luxemburg=s employment contract was made
independently of any protected speech from Luxemburg.

We
review each of these complaints as an attack on the legal sufficiency of the
evidence.  A legal-sufficiency point will
be sustained when (a) there is a complete absence of evidence of a vital fact,
(b) the court is barred by rules of law or evidence from giving weight to the
only evidence offered to prove a vital fact, (c) the evidence offered to prove
a vital fact is no more than a mere scintilla, or (d) the evidence conclusively
establishes the opposite of a vital fact. 
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  We must view the evidence in a light that
tends to support the jury=s finding and disregard all evidence and inferences to the
contrary.  Bradford v. Vento, 48
S.W.3d 749, 754 (Tex. 2001).  Because
none of the parties objected to the jury charge, we review the sufficiency of
the evidence in light of the charge submitted. 
Id.  If the record contains
any evidence of probative force to support the jury=s finding, the legal-sufficiency
challenge must be overruled.  ACS
Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997).








Appellants
contend there is no evidence that Luxemburg had an objectively reasonable
expectation of continued employment at TAMUG, and therefore, Luxemburg
presented no evidence of a constitutionally protected property interest.  We agree. 
To show that he had a property interest in his employment, Luxemburg was
required to prove that he had a legitimate claim of entitlement to continued
employment, and not just a unilateral expectation.  See Roth, 408 U.S. at 577, 92
S. Ct. at 2709.  The record shows that
for each school year he worked as a tenure-track assistant professor, Luxemburg
was appointed to a specific nine-month term beginning in September and ending
in May.  Luxemburg testified that, as he
perceived them, the rules of Texas A&M required a hearing before he could
be removed from the tenure track. 
However, this subjective testimony does not rise above the level of a
unilateral and unreasonable expectation of continued employment.  The only other evidence uncovered from our review
of the record is that, upon hearing that Slotta had
suggested terminating Luxemburg after only one semester, McCloy
rejected this suggestion as premature.

Viewing
the evidence in the light most favorable to the jury=s verdict, we conclude that Luxemburg
has presented no more than a mere scintilla of evidence that he had an
objectively reasonable expectation of continued employment with TAMUG.  Accordingly, the evidence is legally
insufficient to support the jury=s response to Question 1.  Because Questions 2 and 3 were conditioned on
an affirmative answer to Question 1, we find the evidence legally insufficient
to support the jury=s answers to those questions as well.

We also
conclude the evidence was legally insufficient to support the jury=s answer to Question 4.  According to the jury charge, Luxemburg was
required to prove that he requested a hearing to clear his name against the
allegedly stigmatizing charges, and that Ano such hearing was held in
connection with the employment actions taken against him.@ 
With respect to Texas A&M=s decision not to reappoint him for
the 1994-95 school year, Luxemburg presented no evidence whatsoever that he
ever requested a hearing to clear his name or for any other reason.  While Luxemburg did file grievances and
request hearings relating to numerous alleged acts by Slotta,
Evans, and McCloy during the 1990-91 school year,
Luxemburg concedes in his pleadings that those grievances were heard by McCloy and later appealed to the Tenure Advisory
Committee.  Therefore, we conclude that
Luxemburg has presented no evidence that he requested a name-clearing hearing
or that any request for such a hearing was refused.








With
respect to Luxemburg=s free-speech claim, appellants argue that the evidence
establishes as a matter of law that the decision not to reappoint Luxemburg was
made independently of Luxemburg=s protected speech.  To
support this claim, appellants cite only the testimony of TAMUG=s CEO, David Schmidley,
who ultimately made the decision not to reappoint Luxemburg for the 1994-95
school year.  Schmidley
only stated in general terms that whether or not a professor has filed a
grievance would make no difference to his renewal decision.  We cannot say that this testimony
conclusively establishes that the decision not to reappoint Luxemburg was
wholly independent of his allegedly protected speech.

Appellants
also claim Luxemburg failed to present legally sufficient evidence of a causal
connection between his speech and the decision not to renew his
appointment.  In response to Question 5,
the jury found that Luxemburg=s protected speech was a substantial or motivating factor for
the adverse employment actions taken against him.[3]  Neither party objected to the submission of
this question; therefore, we review the sufficiency of the evidence in light of
the charge submitted.  Bradford,
48 S.W.3d at 754. 








Although
Question 5 specifically asks whether Luxemburg=s conduct was Aa substantial or motivating factor@ for appellants= employment actions, appellants argue
that the accompanying instruction defined Asubstantial or motivating factor@ in such a way that the jury was
required to find that appellants= actions would not have occurred but
for Luxemburg=s grievances and allegations.[4]  We disagree. 
The court=s instruction merely states that if Luxemburg=s protected speech is a but-for cause
of appellants= actions, it necessarily is also a
substantial or motivating factor for those actions.  We do not read this instruction as requiring
the jury to find but-for causation before answering Ayes@ to Question 5.  If the court had so intended, it could have
included an instruction to that effect. 
For example, in criminal cases (where it appears this form of
instruction is still in common use), an instruction that AIf you find X, then you will find the
defendant guilty@ is frequently followed by a separate instruction that AUnless you find X, you will acquit.@ 
See, e.g., Solomon v. State, 49 S.W.3d 356, 367-68 (Tex. Crim. App. 2001); Planter v. State, 9 S.W.3d 156,
157-58 n.2 (Tex. Crim. App. 1999); State v. Sauceda, 980 S.W.2d 642, 644 (Tex. Crim.
App. 1998).   In the alternative, the
court could have worded the question itself in a way that clearly required a
finding of but-for causation, without reference to another causation
standard.  Because the instruction did
not clearly and completely alter the causation standard set forth in the question,
we review the evidence to determine whether there was legally sufficient
evidence that Luxemburg=s conduct was a substantial or motivating factor for
appellants= employment actions.  See Hyundai Motor Co. v. Rodriguez,
995 S.W.2d 661, 664 (Tex. 1999) (AThe goal of the charge is to submit
to the jury the issues for decision logically, simply, clearly, fairly,
correctly, and completely.@). 








The
causal link between Luxemburg=s protected speech and the adverse employment action can be
established by circumstantial evidence.  See
City of Fort Worth v. Zimlich, 29 S.W.3d 62,
69 (Tex. 2000).  Such evidence includes,
among other things, knowledge of the protected speech by a decision maker.  See id.  Schmidley testified
he Areviewed all of Dr. Luxemburg=s file@ and the decision not to reappoint
him was based on Aall the material we had.@ 
Schmidley was undeniably aware of Luxemburg=s previous complaints and
grievances.  Additionally, Luxemburg
testified that while his grievances were pending, Evans, who was then Dean of
the Maritime College, told Luxemburg he would lose his job if he continued to
complain.  Luxemburg later informed McCloy, whom Evans reported to, that Evans was trying to Aintimidate@ Luxemburg to keep him from complaining.  Although Evans was not directly involved in
making the decision not to reappoint Luxemburg, McCloy
was.  We conclude the record contains
legally sufficient evidence to support the jury=s answer to Question 5.

In
summary, we find there is not sufficient evidence to support the jury=s findings on Luxemburg=s due-course claim, but the record
contains legally sufficient evidence to support the jury=s finding on Luxemburg=s free-speech claim.  Accordingly, we sustain appellants= fifth issue as to the first four
questions in the jury charge, and we overrule appellants= complaint as to Question 5.

                                                          E.  Declaratory Relief








Appellants
urge in their fourth issue that Luxemburg is not entitled to relief under the
Uniform Declaratory Judgments Act.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 37.004(a) (Vernon 1997).  In his amended petition, Luxemburg sought,
among other things, Adeclaratory relief whereby in each of the acts of the
Defendant(s) would be declared to have been the acts of a policymaker or acts
ratified by a policymaker, all in violation of the Constitution of the State of
Texas.@ 
In its motion for entry of judgment, Luxemburg requested the court to
make certain declarations Aand enter same as declaratory judgments against defendants.@ 
The Adeclarations@ requested by Luxemburg were nothing
more than findings necessary to support his claims for violations of the Texas
Constitution.  Thus, Luxemburg was not
entitled to seek relief under the Declaratory Judgments Act.  See Tucker v. Graham, 878
S.W.2d 681, 683 (Tex. App.CEastland 1994, no writ) (AA declaratory judgment action is not
appropriate where plaintiff=s cause of action is mature and enforceable in a pending suit
that involves the same parties and the same issues as alleged in the
declaratory judgment action.@).

Reviewing
the court=s judgment, however, we see no
indication that the court awarded Luxemburg any declaratory relief.  Therefore, appellants= fourth issue is moot.

                                                           F.  Monetary Awards

In
issues six through eight, appellants challenge the awards for back pay,
attorney=s fees, and costs contained in the
amended final judgment.  Appellants claim
(1) the trial court lacked discretion to award any monetary relief, whether as
damages, attorney=s fees, or costs, for a violation of the Texas Constitution;
(2) attorney=s fees and costs were improperly
awarded under the Uniform Declaratory Judgments Act; and (3) Luxemburg did not
present sufficient evidence to support his attorney=s-fees award.

                                                                   1.  Back Pay

Among
other things, the amended final judgment awarded Luxemburg $275,000 in Aback salary and attendant benefits.@ 
Appellants argue this constitutes an impermissible award of damages for
a violation of Luxemburg=s rights under the state constitution.  We agree. 
In City of Beaumont v. Bouillion, the
Texas Supreme Court held that there is no right of action for damages arising
under the free-speech provision of the Texas Constitution.  896 S.W.2d 143, 147 (Tex. 1995).  This court, as well as others, has concluded
that the holding in Bouillion applies to
violations of other provisions in the Texas Constitution as well, including a
plaintiff=s right to due course of law.  See Jackson, 994 S.W.2d at
400-01.  In Jackson, we further
found that an employee=s request for back pay constituted a claim for damages, and
thus was not recoverable under the Texas Constitution.  Id. at 401.  Luxemburg has presented no persuasive reason
for us to depart from this holding. 
Accordingly, we conclude the trial court erred in awarding back pay to
Luxemburg.

                                                                              








                                                              2.  Attorney=s Fees

The
trial court=s judgment also awarded Luxemburg
attorney=s fees in the amount of
$120,000.  Appellants contend that the
award of attorney=s fees is an improper use of the Uniform Declaratory Judgments
Act.  As we set forth above, Luxemburg=s declaratory judgment action
requested no greater or different relief than his claim for equitable
relief.  Therefore, Luxemburg had no
legal right to recover his attorney=s fees under the Uniform Declaratory
Judgments Act.  See University of Tex.
v. Ables, 914 S.W.2d 712, 717 (Tex. App.CAustin 1996, no writ).  Luxemburg has identified no other ground on
which he might be entitled to recover his attorney=s fees.  See Travelers Indem.
Co. of Conn. v. Mayfield, 923 S.W.2d 590, 593 (Tex. 1996) (AIn Texas, attorney=s fees may not be recovered from an
opposing party unless such recovery is provided for by statute or by contract
between the parties.@).  Accordingly, we
conclude the trial court erred in awarding attorney=s fees to Luxemburg.[5]

                                                                       3.  Costs

Appellants
also challenge the trial court=s award of $2,500 in court costs.  Texas Rule of Civil Procedure 131 provides, AThe successful party to a suit shall
recover of his adversary all costs incurred therein, except where otherwise
provided.@ 
Tex. R. Civ. P. 131.  Luxemburg was the successful party in the
lawsuit below.  Luxemburg is thus
entitled to recover his court costs.

Appellants
suggest that Bouillion precludes Luxemburg
from recovering any monetary award whatsoever, including costs.  We do not read Bouillion=s prohibition against a claim for
damages so broadly as to limit a litigant=s otherwise valid right to recover
his or her costs.  We find the trial
court did not err in awarding Luxemburg his costs.

                                                                              








                                                            G.  Injunctive Relief

Finally,
in their ninth issue, appellants argue that the amended final judgment did not
meet the minimum requirements of an order granting injunctive relief.  See Tex.
R. Civ. P. 683.  Specifically,
appellants complain that the paragraph in the court=s judgment ordering Luxemburg to be
reinstated does not describe in sufficient detail the acts sought to be
enjoined.[6]  The paragraph in question states:

Defendant Texas A&M University System, and its
officers, agents, and employees as successors in interest to Defendants, are
hereby ORDERED to reinstate Plaintiff to the position formerly held by him when
terminated or to a comparable position as if he, Plaintiff had not been
suspended and/or terminated.  Defendant
is hereby ORDERED to reinstate Plaintiff to a non-tenured, tenure-accruing or
comparable position, within fourteen (14) days of the signing of this judgment.

Appellants
claim that this language leaves the injunctive relief Asubject to Luxemburg=s own subjective belief regarding
which position he formerly held, and how long his original term of appointment
was.@ 
We disagree.  Assuming, as both
parties do, that a judgment ordering reinstatement is subject to Rule 683, we
believe the court=s order describes in reasonable detail the acts orderedCthat Texas A&M is to reinstate
Luxemburg  to the position he held when
terminated or a comparable position. 
While the court=s use of the phrase Acomparable position@ may be subject to some
interpretation, this is intended solely to give Texas A&M some flexibility
in conforming to the court=s order.  Contrary to
appellants= contention, we do not find that
enforcement of the court=s order in any way relies on Luxemburg=s subjective belief concerning Athe position formerly held by him
when terminated.@  We overrule
appellants= ninth issue.

                                                                              








                                                             IV.  Conclusion

Luxemburg=s claims were not precluded by the
doctrines of res judicata
or collateral estoppel, nor was his request for
equitable relief barred by limitations. 
We find there was legally sufficient evidence to support the jury=s finding that appellants took action
against Luxemburg in violation of his constitutional right to free speech,
although we find the evidence was insufficient to support the jury=s findings regarding Luxemburg=s due-course claims.  Accordingly, we reverse that portion of the
trial court=s judgment entering judgment against
appellants on Luxemburg=s due-course claims. 
Additionally, the trial court erred in awarding Aback salary and attendant benefits@ and attorney=s fees to Luxemburg, and we modify
the trial court=s judgment to delete those awards.  The remainder of the trial court=s judgment, as modified, is affirmed.

 

 

 

/s/                                                                        /s/        Leslie Brock Yates

Justice

 

 

 

 

Judgment rendered and Majority and
Dissenting Opinions on Motion for Rehearing filed October 3, 2002.

Panel consists of Justices Yates,
Edelman, and Draughn.[7]
(Edelman, J. dissenting).

Publish C Tex.
R. App. P. 47.3(b).








Motion for Rehearing Overruled,
Opinion of July 11, 2002, Withdrawn; Affirmed as Modified in Part, Reversed and
Rendered in Part, and Majority
and Dissenting Opinions on Motion for Rehearing filed October 3, 2002.

 

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-00-00105-CV

_______________

 

TEXAS A&M UNIVERSITY SYSTEM, DR. WILLIAM J.
MERRELL, IN HIS OFFICIAL CAPACITY AS PROFESSOR OF OCEANOGRAPHY, DR. WILLIAM
EVANS, IN HIS OFFICIAL CAPACITY AS PROFESSOR OF MARINE BIOLOGY, and DR. JAMES
M. McCLOY, IN HIS OFFICIAL CAPACITY AS DEPARTMENT
HEAD AND PROFESSOR OF MARITIME ADMINISTRATION, Appellants

 

V.

 

LEON LUXEMBURG, Appellee

                                                                                                                                               


On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 94-CV-1093

                                                                                                                                               


 

D I S S E N T I N G   O P I N I O N   O N

M O T I O N   F
O R   R E H E A
R I N G

 








I
agree with the majority opinion except in overruling the State=s challenge to the sufficiency of the
evidence to prove a causal connection between Luxemburg=s speech and the decision not to
renew his appointment.  The majority
opinion correctly recites, and the parties all agree, that we review the
sufficiency of the evidence in light of the charge submitted, the relevant
portion of which was set forth in question 5 and its accompanying instruction
(the Ainstruction@):

Do you find that Leon Luxemburg has shown by a preponderance
of the evidence that his protected speech was a substantial or motivating
factor for the employment actions taken against him by Defendant(s)?

A substantial or motivating factor need not be the only
reason for the action(s) taken, if any. 
There may be more than one reason for the employment actions taken
against Dr. Luxemburg.  If you find
that those actions, if any, would not have occurred but for Dr. Luxemburg=s allegations of fraud and cover-up regarding the
National Science Foundation proposal and/or allegations of discrimination, then
you will find that Dr. Luxemburg=s statements were a substantial or
motivating factor in the employment actions taken against him.

Whether
this question and instruction are correct according to Hinds[1] is of no consequence here
since we are not reviewing the submission for charge error.  Similarly, regardless of what meaning the
term Asubstantial or motivating factor@ may have in the case law, its only
meaning to the jury and our sufficiency review is that provided in the
instruction, if any.  Therefore, our task
is simply to discern the causation standard set forth in the instruction and
then assess whether the evidence was sufficient to prove it.








The
third sentence of the instruction instructs the jury to find causation if it
determines that the employment action would not have occurred but for Luxemburg=s allegations.  But what does this sentence mean if the jury
does not find such a but-for connection? 
The majority opinion concludes that it does not require a but-for
connection, but apparently only includes it illustratively as something (but
not the only thing) that would constitute a substantial or motivating
factor.  If the majority is correct that
the third sentence does not require a but-for standard, then: (1) that sentence
is merely advisory; (2) the instruction fails to define, or thereby limit the
scope of, the appropriate causation standard[2];
(3) the jury was authorized to decide the undefined Asubstantial or motivating factor@ causation requirement according to
whatever standard it chose (or none at all); and (4) there is no definition of Asubstantial or motivating factor@ by which a sufficiency review can be
conducted in this case.

Although
I agree that the instruction was poorly phrased, I do not read it as loosely as
the majority.  Rather, I believe the AIf you find . . ., then you will find
. . . .@ language is tantamount to saying, AIf you do not find . . ., then you
will not find . . . .@ and, accordingly, that the third sentence of the instruction
required a but-for standard of causation. 
Moreover, because I do not believe that the evidence identified in the
majority opinion is sufficient to satisfy a but-for standard, I would sustain
the State=s challenge to the sufficiency of the
evidence to prove causation.

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered and Majority and Dissenting Opinions
on Motion for Rehearing filed October 3, 2002.

 

Panel consists of
Justices Yates, Edelman, and Draughn.[3]

Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]  Slotta was never served in the state suit, and although the
record is not clear, Schmidley was apparently
non-suited before trial.  Neither is a
party to this appeal.





[2]  The Texas
due-course clause is nearly identical to the federal due-process clause found
in the United States Constitution.  University
of Tex. Med. Sch. v. Than, 901 S.W.2d 926, 929
(Tex. 1995); see U.S. Const.
amend. XIV.  Although the federal version
refers to Adue process@ rather
than Adue course,@ our
supreme court has stated that these two terms have no meaningful
distinction.  See Than, 901 S.W.2d
at 929.





[3]  Question 5 and
the accompanying instruction are as follows:

 

Do you find that Leon Luxemburg has shown by a
preponderance of the evidence that his protected speech was a substantial or
motivating factor for the employment actions taken against him by Defendant(s)?

 

A substantial or motivating factor need not be the only reason for the
action(s) taken, if any.  There may be
more than one reason for the employment actions taken against Dr.
Luxemburg.  If you find that those
actions, if any, would not have occurred but for Dr. Luxemburg=s allegations of fraud and cover-up regarding the
National Science Foundation proposal and/or allegations of discrimination, then
you will find that Dr. Luxemburg=s
statements were a substantial or motivating factor in the employment actions
taken against him.





[4]  The Texas
Supreme Court has rejected the use of a Asubstantial
reason@ causation standard in certain
employment-discrimination cases in favor of a standard by which the employee
must prove the employer=s prohibited action would not have occurred when it
did in the absence of the employee=s
protected conduct.  See Tex. Dep=t of Human Servs. v. Hinds, 904 S.W.2d 629, 635-36 (Tex. 1995); but see Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex.
2001) (concluding that Aa motivating factor@ is the
correct causation standard for unlawful-employment-practice claims under the
Texas Commission on Human Rights Act).





[5]  Based on this
finding, we need not address appellants= eighth
issue, complaining that Luxemburg failed to submit competent evidence
supporting the amount of attorney=s fees.





[6]  Appellants
raise no complaint regarding the use of reinstatement as a remedy for a
violation of the Texas Constitution=s
free-speech provision.  Accordingly, we
express no opinion regarding the availability of such relief.





[7]  Senior Justice
Joe L. Draughn sitting by assignment.





[1]  See Tex. Dep=t of Human Servs. v. Hinds, 904 S.W.2d 629, 637 (Tex. 1995) (holding that
correct causation standard is whether employer=s action
would not have occurred when it did had the employee=s protected communication not been made).





[2]  Nor do the
first two sentences of the instruction resolve the issue because they are
consistent with either a but-for or a less than but-for standard.  See Hinds, 904 S.W.2d at 633-36
(distinguishing between sole cause standard and but-for standard adopted).





[3]  Senior Justice
Joe L. Draughn sitting by assignment.